1   Manni Li (SBN: 273984)
2   mli@meimark.com
    Mei & Mark LLP
3   433 North Camden Drive, Suite 400
    Beverly Hills, CA 90210
4   Tel: (888) 860-5678
    Fax: (310) 564-2769
5
    K. Kevin Mun (Pro Hac Vice)
6   kmun@meimak.com
    Lei Mei (SBN: 240104)
7   mei@meimark.com
    Andrew Riley (Pro Hac Vice)
8   ariley@meimark.com
    Mei & Mark LLP
9   818 18th Street NW, Suite 410
    Washington, DC 20006-3506
10  Tel: (888) 860-5678
    Fax: (888) 706-1173
11
    *Counsel for Defendants*
12

13              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
14

15  DROP STOP LLC, A CALIFORNIA          Case No.: 2:16-cv-07916-AG (SS)
16  LIMITED LIABILITY COMPANY,

17                      PLAINTIFF,        **DEFENDANTS' FIRST AMENDED
                                          ANSWER, AFFIRMATIVE
18          vs.                           DEFENCES, AND
                                          COUNTERCLAIMS TO
19                                        PLAINTIFF'S COMPLAINT FOR
    JIAN QING "JOHNNY" ZHU, AN            PATENT INFRINGEMENT**
20  INDIVIDUAL; ZAKE
    INTERNATIONAL INC., AN INDIANA        Judge:  Hon. Andrew J. Guilford
21  CORPORATION; ZAKE USA, AN
22  UNINCORPORATED ENTITY;
    3BTECH, INC., AN INDIANA
23  CORPORATION; AND SHENZHEN
    ZHOUWU TECHNOLOGY CO., LTD., A
24  CHINESE LIMITED COMPANY.
25
                        DEFENDANTS.
26

27

28

Defendants Jianqing Zhu, 3BTech, Inc. ("3BTech"), Zake International, Inc. ("Zake International"), Zake USA, and Shenzhen Zhouwu Technology Co., Ltd. ("Shenzhen Zhouwu") (collectively "Defendants") respond as follows to the Complaint for Patent Infringement ("Complaint") filed on October 24, 2016, by Plaintiff Drop Stop, LLC ("Plaintiff" or "Drop Stop").

## ANSWER

### Nature of Action

1.     Defendants admit that the U.S. Patent and Trademark Office ("USPTO") issued U.S. Patent No. 8,267,291 (the "'291 Patent"), entitled "Apparatus for Closing Gaps," on September 18, 2012.  Defendants admit that the '291 Patent lists Jeffrey Simon and Marc Newburger as the inventors.  Except as specifically admitted, Defendants lack sufficient information on which to admit or deny the remaining allegations of paragraph 1 and, on that basis, deny the remaining allegations.

2.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2, and therefore deny them.

3.     Defendants deny the allegations of paragraph 3, and specifically deny that Defendants have infringed or are liable for any infringement of any valid and enforceable patents or patent rights of Plaintiff.

4.     Defendants deny the allegations of paragraph 4, and specifically deny that Defendants have infringed or are liable for any infringement of any valid and enforceable patents or patent rights of Plaintiff.

5.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5, and therefore deny them.

### The Parties

6.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 6, and therefore deny them.

7.    Defendants admit that Jianqing Zhu is an individual who goes by the name Jianqing Zhu and Johnny Zhu.  Except as expressly admitted, Defendants generally and specifically deny allegations of paragraph 7.

8.    Defendants admit to paragraph 8.

9.    Defendants deny the allegations of paragraph 9, and specifically deny that Zake USA is an alter ego of Zake International.

10.    Defendants admit that 3BTech is a corporation organized under the laws of the State of Indiana with a principal place of business in Mishawaka, Indiana. Except as expressly admitted, Defendants generally and specifically deny the allegations of paragraph 10.

11.    Defendants admit to paragraph 11.

12.    Defendants deny the allegations of paragraph 12, and specifically deny that Zake USA, Zake International, 3BTech, and Shenzhen Zhouwu are alter egos of one another and of Jianqing Zhu.

13.    Defendants deny the allegations of paragraph 13.

14.    Defendants deny the allegations of paragraph 14.

15.    Defendants deny the allegations of paragraph 15.

## Jurisdiction And Venue

16.    Defendants admit that this action purports to invoke the patent laws of the United States, Title 28. Defendants admit that this Court has subject matter jurisdiction over the claims.  Except as expressly admitted, Defendants generally and specifically deny the remaining allegations of paragraph 16.

17.    Defendants admit that this Court has personal jurisdiction over Defendants.  Except as expressly admitted, Defendants generally and specifically deny the remaining allegations of paragraph 17.

18.    Defendants deny the allegations of paragraph 18.

19.    Defendants deny the allegations of paragraph 19.

20.     Defendants deny the allegations of paragraph 20, and specifically deny that Defendants have infringed or are liable for any infringement of any valid and enforceable patents or patent rights of Plaintiff.

21.     Defendants do not contest venue in this case.  Defendants deny that they have committed any act of patent infringement. Except as expressly admitted and denied, Defendants generally and specifically deny the allegations of paragraph 21.

### Factual Background

22.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22, and therefore deny them.

23.     Defendants admit that the USPTO issued the '291 Patent, entitled "Apparatus for Closing Gaps," in 2012, that the '291 Patent lists Jeffrey Simon and Marc Newburger as the inventors, and that a copy of the '291 Patent was attached as Exhibit A to the Complaint.  Except as expressly admitted, Defendants generally and specifically deny the remaining allegations of paragraph 23.

24.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24, and therefore deny them.

25.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25, and therefore deny them.

26.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26, and therefore deny them.

27.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 27, and therefore deny them.

28.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 28, and therefore deny them.

29.     Defendants admit to paragraph 29.

30.     Defendants admit to paragraph 30.

31.     Defendants deny the allegations of paragraph 31.

32.     Defendants deny the allegations of paragraph 32.

33.     Defendants deny the allegations of paragraph 33.

34.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 34, and therefore deny them.

35.     Defendants admit to paragraph 35.

36.     Defendants admit to paragraph 36.

37.     Defendants admit to paragraph 37.

38.     Defendants deny the allegations of paragraph 38.

39.     Defendants admit to paragraph 39.

40.     Defendants deny the allegations of paragraph 40.

41.     Defendants deny the allegations of paragraph 41.

42.     Defendants deny the allegations of paragraph 42.

43.     Defendants deny the allegations in paragraph 43.

44.     Defendants deny the allegations of paragraph 44.

45.     Defendants admit to paragraph 45.

46.     Defendants admit that the USPTO records list Shenzhen Zhouwu is located at "CHINA 2/F Bldg. C, GeTaiLong Industrial Park No.445, Bulong Rd., Bantian St., Longgang Shenzhen, Guangdong CHINA." Except as expressly admitted, Defendants generally and specifically deny allegations of paragraph 46.

47.     Defendants deny the allegations of paragraph 47, and specifically deny that Zake International, Zake USA, 3BTech, and Shenzhen Zhouwu are alter egos of one another and of Jianqing Zhu.

48.     Defendants deny the allegations of paragraph 48, and specifically deny that Zake International, Zake USA, and 3B Tech are general agents for Shenzhen Zhouwu.

49.     Defendants deny the allegations of paragraph 49, and specifically deny that Defendants have infringed or are liable for any infringement of any valid and enforceable patents or patent rights of Plaintiff.

50.     Defendants deny the allegations of paragraph 50, and specifically deny that Defendants have infringed or are liable for any infringement of any valid and enforceable patents or patent rights of Plaintiff.

51.     Defendants deny the allegations of paragraph 51, and specifically deny that Defendants have infringed or are liable for any infringement of any valid and enforceable patents or patent rights of Plaintiff.

52.     Defendants deny the allegations of paragraph 52.

53.     Defendants deny the allegations of paragraph 53, and specifically deny that Defendants have any relationship or connection with sellers "Coolgate" and "BOTU."

54.     Defendants admit to paragraph 54.

55.     Defendants admit that two purported Amazon listings for the ChiTronic Product were attached as Exhibit B and C.  Except as expressly admitted, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 55, and therefore deny them.

56.     Defendants deny the allegations of paragraph 56, and specifically deny that Defendants have infringed or are liable for any infringement of any valid and enforceable patents or patent rights of Plaintiff.

57.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 57, and therefore deny them.  To the extent that Plaintiff alleges that Defendants list or are otherwise responsible for listing the ChiTronic Product on Amazon.com, Defendants specifically deny the allegation because Defendants do not list or are otherwise responsible for listing the ChiTronic Products on Amazon.com.

58.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 58, and therefore deny them.  To the extent that Plaintiff alleges that Defendants list or are otherwise responsible for listing the ChiTronic Product on Amazon.com, Defendants specifically deny the

allegation because Defendants do not list or are otherwise responsible for listing the ChiTronic Products on Amazon.com.

59. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 59, and therefore deny them.

60. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 60, and therefore deny them. To the extent that Plaintiff alleges the alleged ChiTronic Product listed by "COOLGATE" as one of Defendants' listings, Defendants specifically deny the allegation because Defendants have no relationship or connection to "COOLGATE."

61. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 61, and therefore deny them. To the extent that Plaintiff alleges the seller "BOTO" is affiliated with Defendants, Defendants specifically deny the allegation because Defendants have no relationship or connection to "BOTU."

62. Defendants deny the allegations of paragraph 62, and specifically deny that Defendants have infringed or are liable for any infringement of any valid and enforceable patents or patent rights of Plaintiff.

63. Defendants admit that the ChiTronic Product is intended to fill a gap between a front seat and a console. Except as expressly admitted, Defendants generally and specifically deny the allegations of paragraph 63.

64. Defendants admit that the ChiTronic Product has a cover material and an internal material. Except as expressly admitted, Defendants generally and specifically deny the allegations of paragraph 64.

65. Defendants admit that the ChiTronic Product is intended to fill a gap between a front seat and a console of an automobile. Except as expressly admitted, Defendants generally and specifically deny the allegations of paragraph 65.

66.     Defendants admit that the ChiTronic Product is intended to move with a front seat relative to a console.  Except as expressly admitted, Defendants generally and specifically deny the allegations of paragraph 66.

67.     Defendants admit that the ChiTronic Product includes an opening for receiving a car seatbelt. Except as expressly admitted, Defendants generally and specifically deny the allegations of paragraph 67.

68.     Defendants deny the allegations of paragraph 68.

69.     Defendants admit that the ChiTronic Product includes a cover material and an internal material different from the cover material.  Except as expressly admitted, Defendants generally and specifically deny the allegations of paragraph 69.

70.     Defendants deny the allegations of paragraph 70.

71.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 71, and therefore deny them.

72.     Defendants deny the allegations of paragraph 72.

73.     Defendants deny the allegations of paragraph 73.

74.     Defendants deny the allegations of paragraph 74.

75.     Defendants deny the allegations of paragraph 75.

## COUNT I

### (Alleged Infringement of the '291 Patent)

76.     Defendants repeat their foregoing responses to paragraphs 1 - 75.

77.     Defendants deny the allegations of paragraph 77, and specifically deny that Defendants have infringed or are liable for any infringement of any valid and enforceable patents or patent rights of Plaintiff.

78.     Defendants deny the allegations of paragraph 78, and specifically deny that Defendants have violated 35 U.S.C. §§ 271 (a) through (c) and that they have infringed or are liable for any infringement of any valid and enforceable patents or patent rights of Plaintiff under the '291 patent, whether under §§ 271(a) through (c) or any other provision of the patent laws.

79.     Defendants admit that the ChiTronic Product is intended to fill a gap between a front seat and a console of an automobile.  Except as expressly admitted, Defendants generally and specifically deny the allegations of paragraph 79.

80.     Defendants deny the allegations of paragraph 80.

81.     Defendants deny the allegations of paragraph 81.

82.     Defendants admit that the ChiTronic Product can be used in an automobile having a center console.  Except as expressly admitted, Defendants generally and specifically deny the allegations of paragraph 82.

83.     Defendants admit that the ChiTronic Product is intended to fill a gap between a front seat and a console of an automobile and has a cover material and an internal material different from the cover material.  Except as expressly admitted, Defendants generally and specifically deny the allegations of paragraph 83.

84.     Defendants admit that the ChiTronic Product has an opening for receiving a car seatbelt.  Except as expressly admitted, Defendants generally and specifically deny the allegations of paragraph 84.

85.     Defendants deny the allegations of paragraph 85 and specifically deny that Defendants have infringed or are liable for any infringement of any valid and enforceable patents or patent rights of Plaintiff.

86.     Defendants deny the allegations of paragraph 86, and specifically deny that Defendants have infringed or are liable for any infringement of any valid and enforceable patents or patent rights of Plaintiff.

87.     Defendants deny the allegations of paragraph 87, and specifically deny that Defendants have infringed or are liable for any infringement of any valid and enforceable patents or patent rights of Plaintiff.

88.     Defendants deny the allegations of paragraph 88.

89.     Defendants deny the allegations of paragraph 89, and specifically deny that Defendants have infringed or are liable for any infringement of any valid and enforceable patents or patent rights of Plaintiff.

90.     Defendants deny the allegations of paragraph 90, and specifically deny that Defendants have infringed or are liable for any infringement of any valid and enforceable patents or patent rights of Plaintiff.

91.     Defendants admit to paragraph 91.

92.     Defendants deny the allegations of paragraph 92, and specifically deny that Defendants have infringed or are liable for any infringement of any valid and enforceable patents or patent rights of Plaintiff.

93.     Defendants deny the allegations of paragraph 93, and specifically deny that Defendants have infringed or are liable for any infringement of any valid and enforceable patents or patent rights of Plaintiff.

94.     Defendants deny the allegations of paragraph 94, and specifically deny that Defendants have infringed or are liable for any infringement of any valid and enforceable patents or patent rights of Plaintiff.  Defendants also specifically deny that Plaintiff has suffered or will suffer any injury whatsoever, whether irreparable or otherwise, due to any infringement by Defendants and that Plaintiff is entitled to an injunction or to any other relief, order, or judgment against Defendants whatsoever.

95.     Defendants repeat their foregoing responses to paragraphs 1 - 94.

96.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 96, and therefore deny them.

97.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 97, and therefore deny them.

98.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 98, and therefore deny them.

## **DEMAND FOR JURY TRIAL**

99.     This paragraph sets forth the demand for jury trial requested by Plaintiff to which no response is required.

## RELIEF REQUESTED

These paragraphs set forth the statement of relief requested by Plaintiff to which no response is required. Defendants deny that Plaintiff are entitled to any of the requested relief and denies any allegations contained in the Prayer for Relief.  Plaintiff is not entitled to any damage, enhanced damage, injunctive relief, costs, fees, interest, or any other type of recovery from Defendants.  Plaintiff's prayer for relief should, therefore, be denied in its entirety and with prejudice.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE – FAILURE TO STATE CLAIM FOR RELIEF

100.   Drop Stop has failed to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE – NON-INFRINGEMENT

101.   Defendants do not infringe, directly or indirectly, any claims of the '291 Patent, either literally or under the doctrine of equivalents, willfully or otherwise.

## THIRD AFFIRMATIVE DEFENSE – INVALIDITY

102.   Each and every claim of the '291 Patent is invalid for failure to comply with one or more of the conditions for patentability, including but not limited to inventorship, utility, novelty, non-obviousness, enablement, indefiniteness, and written description, as set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

103.   In particular, the '291 Patent fails to comply with the written description requirements of Pre-AIA 35 U.S.C. § 112, first paragraph.  Any claims or claim recitations added after filing of the application must be supported by the original disclosure.  The prosecution history of the '291 Patent clearly reflects that the claims of the '291 Patent lack adequate written description support in the original disclosure.

104.   For example, in reply to the Final Official Action mailed January 14, 2011, rejecting all of the pending claims, Plaintiff's counsel introduced various features relating to its slot that cannot be reasonably supported by the specification or drawings as originally filed.  For example, the Second Supplemental Response filed on

April 27, 2012, Plaintiff's counsel added new claim 27 (now independent claim 8) with recitations of, among other things, "a slot … aligned longitudinally when placed in the vehicle" and "the slot [being] generally oval in shape when engaged with the safety belt" and new claim 33 (now independent claim 14) with recitations of, among other things, "a slot [having] an open configuration when engaged with the safety belt and a partially closed configuration when disengaged from the safety belt."  Neither the specification nor the drawings of the original application provides any support for the recitations added by the April 27, 2012 Response.

105.   Additionally, none of the embodiments in the original specification or drawings includes or discloses "a slot … aligned longitudinally when placed in the vehicle" and "the slot [being] generally oval in shape when engaged with the safety belt" of new claim 27 or "a slot [having] an open configuration when engaged with the safety belt and a partially closed configuration when disengaged from the safety belt" of new claim 33.  Instead, all of the embodiments disclosed in the original application included a circular slot.  Nowhere in the original application was there any explicit or implicit disclosure or even slightest suggestion that the circular slot is "aligned longitudinally," "generally oval in shape," or "[having] an open configuration … and a partially closed configuration."  In particular, with respect to the slot "[having] an open configuration … and a partially close configuration," it is clearly evident from the original drawings that the circular slot is large enough to accommodate the seatbelt component and does not have such an alleged "open configuration and a partially closed configuration."  That is, the circular slot has only one open configuration to engage or disengage the seatbelt component.

106.   Accordingly, the claims of the '291 Patent are invalid under 35 U.S.C. § 112, first paragraph, for failure to comply with the written description requirements.

## FOURTH AFFIRMATIVE DEFENSE – PATENT MISUSE

107.   Plaintiff has demanded on numerous occasions that, as a prerequisite condition for settlement of this lawsuit, Defendants be permanently enjoined from the

entire market of car seat gap filler products, although Plaintiff has known or should have known that the '291 Patent cannot and does not cover the entire market of car seat gap filler products.

108.   In a letter from Plaintiff's counsel to Defendants' counsel dated February 16, 2017, Plaintiff reiterated Plaintiff's impermissible demand of a market-wide injunction by requesting Defendants, as a condition for settlement, to stipulate that Defendants be "preliminarily and permanently enjoined from making, using, offering for sale, selling, importing into the United States or selling for importation into the United States any Car Seat Gap Filler (as defined below)."  In the definition section, Plaintiff defined that the term "Car Seat Gap Filler" includes, among other things, "any car seat gap fillers made, sold, offered sale, imported into the United States, or sold for importation into the United States by any of the Defendants or by any of their officers, directors, employees, agents, partners or others working with or for any of the Defendants."  Such a broad definition is, in all legal and practical aspects, calls for a market-wide injunction that Plaintiff has never been and will never be entitled to.

109.   During a Court-directed mediation held on April 10, 2017, Plaintiff maintained its impermissible demand of a market-wide injunction.  To date, Plaintiff continues to demand such a market-wide injunction.

110.   Plaintiff's demand for a market-wide injunction, rather than a narrower injunction rightfully falls under the scope of the '291 Patent, constitutes an impermissible practice of patent misuse that has the effect of extending Plaintiff's statutory rights and does so with an anticompetitive effect. As a result, Plaintiff has impermissibly broadened the physical and/or temporal scope of the patent grant with anticompetitive effect.

111.   Accordingly, Plaintiff has engaged and continues to engage in conducts that have the effect of extending Plaintiff's statutory rights and does so with an anti-competitive effect.  Therefore, Drop Stop should be barred from enforcing the '291 Patent against Defendants based on the doctrine of patent misuse.

## FIFTH AFFIRMATIVE DEFENSE – INEQUITABLE CONDUCT

112.   During prosecution of the '291 Patent, two co-inventors, Jeffrey Simon and Marc Newburger (collectively "Applicants"), who are now the co-presidents of Plaintiff, and at least one of their prosecution attorneys, Daniel M. Cislo of Cislo & Thomas LLP ("Mr. Cislo") committed inequitable conduct before the USPTO, which renders the '291 Patent unenforceable.  As detailed below, Plaintiff obtained the '291 Patent through a serious of egregious and intentional misrepresentations before the USPTO in its attempt to broaden the scope of the '291 Patent beyond what was disclosed in the original disclosure.

113.   On May 16, 2007, Applicants, through their attorneys at Orion Law Group, PLC, filed a patent application from which the '291 Patent issued.  The application was accorded Application No. 11/749,354 (the "'354 Application").  The '354 Application, as originally filed, discloses four distinct embodiments:  (1) embodiment shown in Figs. 1-4; (2) embodiment shown in Fig. 5; (3) embodiment shown in Fig. 6; and (4) embodiment shown in Figs. 7-8.  On September 15, 2010, the USPTO issued an Official Action requiring Applicants to elect one of the four embodiments.  In response, Applicants elected the first embodiment shown in Fig. 1-4, and certain claims directed to embodiments shown in Figs. 5-8 were withdrawn from consideration by the USPTO.

114.   The embodiment of Figs. 1-4 in the '354 Application, as originally filed, are reproduced below.  In the specification of the '354 Application, Applicants provided the following brief descriptions of the drawings:  (1) for Fig. 1, "Figure 1 shows a perspective view of the preferred embodiment of the invention;" (2) for Fig. 1A, "Figure 1A shows a cross-section of the preferred embodiment of the invention;" (3) for Fig. 2, "Figure 2 shows a perspective view of the installation of the apparatus within the setting of an automobile;" (4) for Fig. 3, "Figure 3 shows a perspective view of the apparatus installed in a vehicle;" (5) for Fig. 4, "Figure 4 shows a planar view of the apparatus installed in a vehicle."

1
2
3
4
5
6
7
8
9
10



**<Original Figs. 1-4 of the '354 Application>**

115.   As is abundantly clear from the drawings and the relevant descriptions, all of Figs. 1, 1A, and 2-4 are directed to exactly the same embodiment that has an elongated body with a substantially circular slot 2.  In particular, Figs. 2 and 3 are perspective views of the same embodiment shown in Figs. 1 and 1A being installed and in an installed state, respectively.  Because the specification of the '354 Application is unequivocally clear about Figs. 1, 1A, and 2-4 showing the same, identical embodiment, there is no question or ambiguity for alleging otherwise.

116.   In the September 15, 2010 Official Action, the USPTO rejected all of the pending claims.  On November 8, 2010, Applicants filed a response by amending pending claims and adding a number of new claims.  On January 14, 2011, the USPTO issued a Final Official Action ("Final Official Action") rejecting all of the claims, including those added in the November 8, 2010 response.

117.   On or about February 23, 2011, Applicants changed their prosecution attorney by revoking all previous powers of attorney and granting a new power of attorney to attorneys associated with Cislo & Thomas LLP (Customer No. 25,189). This new power of attorney was accepted on March 3, 2011.

27
28

118.   On April 13, 2011, shortly after the power of attorney was accepted, Mr. Cislo filed an Information Disclosure Statement and a Response to the Final Official Action, together with a Request for Continued Examination.  With the Information Disclosure Statement, Applicants cited a prior art reference of PCT International Publication No. WO/2008/002520 A2 to Manley ("Manley").



**\<Fig. 1 of Manley\>**

119.   Manley discloses a filler device for placement between seats and consoles.  As shown in Fig. 1 of Manley (reproduced above), the filler device comprises a polymer body 10 having an elongate blade 16 and a seat belt boss 19 extending rearward or laterally from the blade 16.  The seat belt boss 19 defines an opening 20 through which a seat belt receiver B of a seat belt may be inserted to retain the filler wedged in place.

120.   Shortly before or after the USPTO issued its Final Official Action, Applicants became aware of a number of competing car seat gap filler products being sold at various online stores, such as, Amazon, Ebay, and HSN, according to Jeffrey Simon in his December 21, 2011 Declaration submitted to the USPTO under 37 C.F.R. § 1.132.  One of the products identified in Exhibit 2 (reproduced below) has a different feature and configuration than the embodiment disclosed in the '354 Application with respect to at least the opening for receiving a seat belt component.



**<Competitor's Product>**

121.   Recognizing that Manley and other prior art references pose as a significant hurdle to obtaining a patent and that Applicants needed claim coverage to stop their competitors, Applicants, through and in concert with Mr. Cislo, began making a series of persistent and intentional misrepresentations before the USPTO to broaden the scope of the original disclosure and to fabricate non-existing support for the broadened scope, in an apparent attempt to overcome Manley and other prior art reference and, at the same time, secure claims that can be asserted against the competitors.  This attempt made through persistent and intentional misrepresentations before the USPTO constitutes inequitable conduct.

122.   On April 13, 2011, Mr. Cislo filed a Response to the Final Official Action in which he amended the specification and the drawings to add Figs. 9A and 9B.  New Fig. 9A and 9B are directed to an entirely new embodiment that could not possibly find any, even slightest, support in the original disclosure of the '354 Application.  New Figs. 9A and 9B are reproduced below in comparison with the original embodiment shown in Figs. 1 and 1A.



**<Original Figs. 1 and 1A>**          **<New Figs. 9A and 9B>**

123.   Nonetheless, Mr. Cislo alleged that "[s]upport for these figures can be found in original Figures 1 through 4" and that "Figures 9A and 9B are essentially the embodiments of Figures 2 through 4 in the uninstalled configuration and installed configuration, but without showing the seatbelt buckle for clarity." Mr. Cislo further alleged that "Figures 9A and 9B are essentially the same as Figure 1 with the slot 2 arranged in the same orientation as shown in Figures 2 through 4 for consistency." As is apparent, however, the original embodiment shown in Figs. 1, 1A, and 2-4 is clearly different from the new embodiment introduced by Figs. 9A and 9B and therefore does not provide any support for new Figs. 9A and 9B. Further, contrary to Mr. Cislo's allegations, Figs. 2 through 4 are not a separate embodiment from that shown in Figs. 1 and 1A. Instead, all of Figs. 1, 1A, and 2-4 are directed to the identical embodiment, where Figs. 2-4 merely illustrate the same embodiment on different perspective views.

124.   Further, in the April 13, 2011 Response, Mr. Cislo amended paragraph [0021] of the specification to insert the following paragraph:

> The slot 2 is created in between the first pliable outer wall 14
> and the second pliable outer wall 15, and is defined by a first
> pliable inner wall 16 and a second pliable inner wall 17
> adjacent to the first pliable inner wall 16. The apparatus
> generally has an uninstalled configuration, as shown in

Figures 1, 1A, and 9, and an installed configuration, and an installed configuration as shown in Figures 2-4.  In the uninstalled configuration the first pliable inner wall 16 and the second pliable inner wall 17 are generally planar and in contact with each other.  In the installed configuration, the first pliable inner wall 16 and the second pliable inner wall 17 are separated from each other and conformable around a safety belt receiving component 6 to provide engagement to the safety belt receiving component 6 when properly positioned adjacent the car seat.  See April 13, 2011 Response at 2.

125.   In an attempt to provide non-existing support for the above new paragraph, Mr. Cislo alleged that "[s]upport for these amendments can be found in original Figures 1 through 4" and that "[t]he amendments are essentially a verbal description of the elongated member shown in these figures."  These statements, again, are clear misrepresentation as neither the original specification nor original Figs. 1 and 1A discloses or even suggests "generally planar" inner walls that are in contact with each other in an uninstalled configuration.  Instead, original Figs. 1 and 1A merely show a pliable casing material with no definable shape or form.  Ironically, rather, this recitation is a feature present in a competitor's product shown above (*supra* at paragraph 120).

126.   Since the original disclosure, including the specification and drawings, is unequivocally clear that it cannot support new Figs. 9A and 9B, Mr. Cislo's misrepresentation in its attempt to add new embodiment and to supply non-existing support could not possibly have been a mere oversight or mistake.  Rather, the misrepresentations were clearly intentional and made with egregious objective to deceive the USPTO.

127.   Mr. Cislo and/or Applicants' deceptive intent in making the misrepresentations can be further inferred by the fact that the new embodiment introduced by Figs. 9A and 9B is similar to, if not identical, to certain competitors' products, which the patentee became aware of after filing the application.  For example, the pictures below compare the new embodiment of Figs. 9A and 9B to a product that the patentee became aware of and submitted in Exhibit 2 of a Supplemental Declaration filed on December 21, 2011.



**&lt;New Embodiment&gt;**                    **&lt;Competitor's Product&gt;**

128.   The embodiment shown in Figs. 9A and 9B is, at least with respect to the slot features, identical to the competitor's product.  Mr. Cislo's attempt to add these new figures, amend the specification, and amend the claims serves as an evidence indicating that not only the original specification and drawings could not cover competitor's product but also Mr. Cislo's misrepresentation was intentional.  This fraudulent attempt has been ultimately rejected by the USPTO, resulting in Mr. Cislo removing the figures along with the equally unsupportable descriptions thereof.  This is only one of many indications that the patentee clearly knew or should have known the inability or deficiency of its original disclosure to cover the competitor's product

but nonetheless proceeded in making egregious misrepresentations by fabricating the alleged support discussed above and presenting them to the USPTO.

129.   Moreover, in a Supplemental Response filed on April 27, 2012, Mr. Cislo added numerous features in the specification and the claims followed by a serious of allegations relating to their alleged support in the original disclosure.  For example, with respect to the slot having "a longitudinal length" and "an oval shape," Mr. Cislo alleged that Figures 2-4 provide the support.  This is not only false but also knowing, intentional misrepresentation, as Figs. 2-4 does not provide any support for a slot having a longitudinal length or an oval shape.

130.   In the Supplemental Response filed on April 27, 2012, Mr. Cislo further misrepresented with deceptive intent when he alleged that Figs. 2-4 also support the recitation of claim 22 (i.e., "slot [consisting] essentially of two walls").  To the contrary, none of Figs. 1, 1A, and 2-4 supports a slot consisting essentially of two walls.  Mr. Cislo and/or Applicants knew or should have known that the figures or the specification of the '354 Application, as originally filed, could not possibly support such claim recitations.

131.   The USPTO relied on the misrepresentations made by Applicants and Mr. Cislo and subsequently issued the '291 Patent.  The USPTO would not have issued the '291 Patent, at least not with the current asserted claims in this case, had Applicants and Mr. Cislo not made the intentional misrepresentations to the USPTO by supplying non-existing support for the added scope in the new claims and/or claim elements.

132.   All of the above-described instances of misrepresentation before the USPTO are clearly intentional and constitute inequitable conduct committed before the USPTO, which should render the '291 Patent unenforceable.

## SIXTH AFFIRMATIVE DEFENSE - NOTICE

133.   To the extent Plaintiff seeks damages for alleged infringement prior to its giving actual or constructive notice of the '291 Patent to Defendants, Drop Stop's claim is barred pursuant to 35 U.S.C. § 287.

## SEVENTH AFFIRMATIVE DEFENSE – NO INJUNCTIVE RELIEF

134.    Plaintiff is not entitled to injunctive relief because: (1) Drop Stop has not suffered any irreparable injury because of Defendants' alleged infringement; (2) Drop Stop has an adequate remedy at law even if it were to prevail in this action; and (3) injunctive relief would be contrary to the public interest.

## EIGHTH AFFIRMATIVE DEFENSE – NON-EXCEPTIONAL CASE

135.    Defendant have engaged in all relevant activities in good faith, thereby precluding Plaintiff, even if it prevails, from recovering reasonable attorney's fees and costs under 35 U.S.C. § 285.

## ADDITIONAL DEFENSES

136.    Defendants reserve the right to supplement or amend this answer, including through the addition of further affirmative defenses, based upon the course of discovery and proceedings in this action.

## COUNTERCLAIMS

Jianqing Zhu, 3BTech, Zake International, Zake USA, and Shenzhen Zhouwu (collectively, "Defendants" or "Counterclaimants") counterclaim against Drop Stop ("Counter-Defendant") as follows:

## THE PARTIES

1.    Jianqing Zhu is an individual who resides in the State of Indiana.

2.    3BTech is an Indiana corporation having its principal place of business in South Bend, Indiana.

3.    Zake International is an Indiana corporation having its principal place of business in South Bend, Indiana.

4.    Zake USA is an unincorporated entity.

5.    Shenzhen Zhouwu is a Chinese corporation having its principal place of business in Guangdong, China.

6.    Drop Stop purports to be a California limited liability company with its principal place of business in Los Angeles, California.

1

**JURISDICTION AND VENUE**

2          7.      Counterclaimants assert violations of federal antitrust law, specifically

3    Section 2 of the Sherman Act, 15 U.S.C. § 1.

4          8.      Counterclaimants assert counterclaims under the Federal Declaratory

5    Judgment Act, 28 U.S.C. §§ 2201 and 2002, seeking declaratory judgments that

6    Counterclaimants have not violated and are not violating patent rights of Drop Stop

7    and that the '291 Patent is invalid and/or unenforceable.

8          9.      Drop Stop has submitted to the personal jurisdiction of this Court.

9          10.     Venue is proper in this district under 28 U.S.C. § 1391 because Drop Stop

10   is subject to personal jurisdiction in this district having filed this suit in this district.

11                              **BACKGROUND**

12         11.     Counterclaimants incorporates herein by reference the allegations of

13   paragraphs 1 – 136 of Defendants Answer and Affirmative Defenses above, as if

14   alleged herein.

15         12.     In its Complaint, Drop Stop alleges that the ChiTronic Product infringes

16   the '291 Patent.  As set forth above, Defendants deny this infringement allegation.  In

17   addition, Defendants set forth affirmative defenses that the '291 patent is invalid and

18   unenforceable.  Defendants also counterclaim against Drop Stop under federal antitrust

19   laws for monopolizing and attempting to monopolize the car seat gap filler market

20   through fraudulent patenting and sham litigation. Defendants also counterclaim for a

21   Court judgment declaring that, among other things, Defendants have not infringed the

22   '291 Patent and that the '291 Patent is invalid and unenforceable.

23         13.     The '291 Patent fails to comply with the written description requirements

24   of Pre-AIA 35 U.S.C. § 112, first paragraph.  Any claims or claim recitations added

25   after filing of the application must be supported by the original disclosure.  The

26   prosecution history of the '291 Patent clearly reflects that the claims of the '291 Patent

27   lack adequate written description support in the original disclosure.

28

14.     For example, in reply to the Final Official Action mailed January 14, 2011, rejecting all of the pending claims, Plaintiff's counsel introduced various features relating to its slot that cannot be reasonably supported by the specification or drawings as originally filed.  For example, the Second Supplemental Response filed on April 27, 2012, Plaintiff's counsel added new claim 27 (now independent claim 8) with recitations of, among other things, "a slot … aligned longitudinally when placed in the vehicle" and "the slot [being] generally oval in shape when engaged with the safety belt" and new claim 33 (now independent claim 14) with recitations of, among other things, "a slot [having] an open configuration when engaged with the safety belt and a partially closed configuration when disengaged from the safety belt."  Neither the specification nor the drawings of the original application provides any support for the recitations added by the April 27, 2012 Response.

15.     Additionally, none of the embodiments in the original specification or drawings includes or discloses "a slot … aligned longitudinally when placed in the vehicle" and "the slot [being] generally oval in shape when engaged with the safety belt" of new claim 27 or "a slot [having] an open configuration when engaged with the safety belt and a partially closed configuration when disengaged from the safety belt" of new claim 33.  Instead, all of the embodiments disclosed in the original application included a circular slot.  Nowhere in the original application was there any explicit or implicit disclosure or even slightest suggestion that the circular slot is "aligned longitudinally," "generally oval in shape," or "[having] an open configuration … and a partially closed configuration."  In particular, with respect to the slot "[having] an open configuration … and a partially close configuration," it is clearly evident from the original drawings that the circular slot is large enough to accommodate the seatbelt component and does not have such an alleged "open configuration and a partially closed configuration."  That is, the circular slot has only one open configuration to engage or disengage the seatbelt component.

16.     Accordingly, the claims of the '291 Patent are invalid under 35 U.S.C. § 112, first paragraph, for failure to comply with the written description requirements.

17.     During prosecution of the '291 Patent, two co-inventors, Jeffrey Simon and Marc Newburger (collectively "Applicants"), who are now the co-presidents of Plaintiff, and at least one of their prosecution attorneys, Daniel M. Cislo of Cislo & Thomas LLP ("Mr. Cislo") committed inequitable conduct before the USPTO, which renders the '291 Patent unenforceable.  As detailed below, Plaintiff obtained the '291 Patent through a serious of egregious and intentional misrepresentations before the USPTO in its attempt to broaden the scope of the '291 Patent beyond what was disclosed in the original disclosure.

18.     On May 16, 2007, Applicants, through their attorneys at Orion Law Group, PLC, filed a patent application from which the '291 Patent issued.  The application was accorded Application No. 11/749,354 (the "'354 Application").  The '354 Application, as originally filed, discloses four distinct embodiments:  (1) embodiment shown in Figs. 1-4; (2) embodiment shown in Fig. 5; (3) embodiment shown in Fig. 6; and (4) embodiment shown in Figs. 7-8.  On September 15, 2010, the USPTO issued an Official Action requiring Applicants to elect one of the four embodiments.  In response, Applicants elected the first embodiment shown in Fig. 1-4, and certain claims directed to embodiments shown in Figs. 5-8 were withdrawn from consideration by the USPTO.

19.     The embodiment of Figs. 1-4 in the '354 Application, as originally filed, are reproduced below.  In the specification of the '354 Application, Applicants provided the following brief descriptions of the drawings:  (1) for Fig. 1, "Figure 1 shows a perspective view of the preferred embodiment of the invention;" (2) for Fig. 1A, "Figure 1A shows a cross-section of the preferred embodiment of the invention;" (3) for Fig. 2, "Figure 2 shows a perspective view of the installation of the apparatus within the setting of an automobile;" (4) for Fig. 3, "Figure 3 shows a perspective view

of the apparatus installed in a vehicle;" (5) for Fig. 4, "Figure 4 shows a planar view of the apparatus installed in a vehicle."



**\<Original Figs. 1-4 of the '354 Application\>**

20.     As is abundantly clear from the drawings and the relevant descriptions, all of Figs. 1, 1A, and 2-4 are directed to exactly the same embodiment that has an elongated body with a substantially circular slot 2.  In particular, Figs. 2 and 3 are perspective views of the same embodiment shown in Figs. 1 and 1A being installed and in an installed state, respectively.  Because the specification of the '354 Application is unequivocally clear about Figs. 1, 1A, and 2-4 showing the same, identical embodiment, there is no question or ambiguity for alleging otherwise.

21.     In the September 15, 2010 Official Action, the USPTO rejected all of the pending claims.  On November 8, 2010, Applicants filed a response by amending pending claims and adding a number of new claims.  On January 14, 2011, the USPTO issued a Final Official Action ("Final Official Action") rejecting all of the claims, including those added in the November 8, 2010 response.

22.     On or about February 23, 2011, Applicants changed their prosecution attorney by revoking all previous powers of attorney and granting a new power of attorney to attorneys associated with Cislo & Thomas LLP (Customer No. 25,189). This new power of attorney was accepted on March 3, 2011.

23.     On April 13, 2011, shortly after the power of attorney was accepted, Mr. Cislo filed an Information Disclosure Statement and a Response to the Final Official Action, together with a Request for Continued Examination.  With the Information Disclosure Statement, Applicants cited a prior art reference of PCT International Publication No. WO/2008/002520 A2 to Manley ("Manley").

24.     Manley discloses a filler device for placement between seats and consoles.  As shown in Fig. 1 of Manley (reproduced below), the filler device comprises a polymer body 10 having an elongate blade 16 and a seat belt boss 19 extending rearward or laterally from the blade 16.  The seat belt boss 19 defines an opening 20 through which a seat belt receiver B of a seat belt may be inserted to retain the filler wedged in place.



<Fig. 1 of Manley>

25.     Shortly before or after the USPTO issued its Final Official Action, Applicants became aware of a number of competing car seat gap filler products being sold at various online stores, such as, Amazon, Ebay, and HSN, according to Jeffrey Simon in his December 21, 2011 Declaration submitted to the USPTO under 37 C.F.R. § 1.132.  One of the products identified in Exhibit 2 (reproduced below) has a different feature and configuration than the embodiment disclosed in the '354 Application with respect to at least the opening for receiving a seat belt component.

**<Competitor's Product>**

26.    Recognizing that Manley and other prior art references pose as a significant hurdle to obtaining a patent and that Applicants needed claim coverage to stop their competitors, Applicants, through and in concert with Mr. Cislo, began making a series of persistent and intentional misrepresentations before the USPTO to broaden the scope of the original disclosure and to fabricate non-existing support for the broadened scope, in an apparent attempt to overcome Manley and other prior art reference and, at the same time, secure claims that can be asserted against the competitors.  This attempt made through persistent and intentional misrepresentations before the USPTO constitutes inequitable conduct.

27.    On April 13, 2011, Mr. Cislo filed a Response to the Final Official Action in which he amended the specification and the drawings to add Figs. 9A and 9B.  New Fig. 9A and 9B are directed to an entirely new embodiment that could not possibly find any, even slightest, support in the original disclosure of the '354 Application.  New Figs. 9A and 9B are reproduced below in comparison with the original embodiment shown in Figs. 1 and 1A.



**<Original Figs. 1 and 1A>**     **<New Figs. 9A and 9B>**

28.     Nonetheless, Mr. Cislo alleged that "[s]upport for these figures can be found in original Figures 1 through 4" and that "Figures 9A and 9B are essentially the embodiments of Figures 2 through 4 in the uninstalled configuration and installed configuration, but without showing the seatbelt buckle for clarity." Mr. Cislo further alleged that "Figures 9A and 9B are essentially the same as Figure 1 with the slot 2 arranged in the same orientation as shown in Figures 2 through 4 for consistency." As is apparent, however, the original embodiment shown in Figs. 1, 1A, and 2-4 is clearly different from the new embodiment introduced by Figs. 9A and 9B and therefore does not provide any support for new Figs. 9A and 9B. Further, contrary to Mr. Cislo's allegations, Figs. 2 through 4 are not a separate embodiment from that shown in Figs. 1 and 1A. Instead, all of Figs. 1, 1A, and 2-4 are directed to the identical embodiment, where Figs. 2-4 merely illustrate the same embodiment on different perspective views.

29.     Further, in the April 13, 2011 Response, Mr. Cislo amended paragraph [0021] of the specification to insert the following paragraph:

> The slot 2 is created in between the first pliable outer wall 14
>
> and the second pliable outer wall 15, and is defined by a first

pliable inner wall 16 and a second pliable inner wall 17
adjacent to the first pliable inner wall 16.  The apparatus
generally has an uninstalled configuration, as shown in
Figures 1, 1A, and 9, and an installed configuration, and an
installed configuration as shown in Figures 2-4.  In the
uninstalled configuration the first pliable inner wall 16 and
the second pliable inner wall 17 are generally planar and in
contact with each other.  In the installed configuration, the
first pliable inner wall 16 and the second pliable inner wall
17 are separated from each other and conformable around a
safety belt receiving component 6 to provide engagement to
the safety belt receiving component 6 when properly
positioned adjacent the car seat.  See April 13, 2011
Response at 2.

30.     In an attempt to provide non-existing support for the above new
paragraph, Mr. Cislo alleged that "[s]upport for these amendments can be found in
original Figures 1 through 4" and that "[t]he amendments are essentially a verbal
description of the elongated member shown in these figures."  These statements, again,
are clear misrepresentation as neither the original specification nor original Figs. 1 and
1A discloses or even suggests "generally planar" inner walls that are in contact with
each other in an uninstalled configuration.  Instead, original Figs. 1 and 1A merely
show a pliable casing material with no definable shape or form.  Ironically, rather, this
recitation is a feature present in a competitor's product shown above (*supra* at
paragraph 120).

31.     Since the original disclosure, including the specification and drawings, is
unequivocally clear that it cannot support new Figs. 9A and 9B, Mr. Cislo's
misrepresentation in its attempt to add new embodiment and to supply non-existing
support could not possibly have been a mere oversight or mistake.  Rather, the

misrepresentations were clearly intentional and made with egregious objective to deceive the USPTO.

32.     Mr. Cislo and/or Applicants' deceptive intent in making the misrepresentations can be further inferred by the fact that the new embodiment introduced by Figs. 9A and 9B is similar to, if not identical, to certain competitors' products, which the patentee became aware of after filing the application.  For example, the pictures below compare the new embodiment of Figs. 9A and 9B to a product that the patentee became aware of and submitted in Exhibit 2 of a Supplemental Declaration filed on December 21, 2011.



**<New Embodiment>**          **<Competitor's Product>**

33.     The embodiment shown in Figs. 9A and 9B is, at least with respect to the slot features, identical to the competitor's product.  Mr. Cislo's attempt to add these new figures, amend the specification, and amend the claims serves as an evidence indicating that not only the original specification and drawings could not cover competitor's product but also Mr. Cislo's misrepresentation was intentional.  This fraudulent attempt has been ultimately rejected by the USPTO, resulting in Mr. Cislo removing the figures along with the equally unsupportable descriptions thereof.  This

1   is only one of many indications that the patentee clearly knew or should have known
2   the inability or deficiency of its original disclosure to cover the competitor's product
3   but nonetheless proceeded in making egregious misrepresentations by fabricating the
4   alleged support discussed above and presenting them to the USPTO.

5         34.    Moreover, in a Supplemental Response filed on April 27, 2012, Mr. Cislo
6   added numerous features in the specification and the claims followed by a serious of
7   allegations relating to their alleged support in the original disclosure.  For example,
8   with respect to the slot having "a longitudinal length" and "an oval shape," Mr. Cislo
9   alleged that Figures 2-4 provide the support.  This is not only false but also knowing,
10  intentional misrepresentation, as Figs. 2-4 does not provide any support for a slot
11  having a longitudinal length or an oval shape.

12        35.    In the Supplemental Response filed on April 27, 2012, Mr. Cislo further
13  misrepresented with deceptive intent when he alleged that Figs. 2-4 also support the
14  recitation of claim 22 (i.e., "slot [consisting] essentially of two walls").  To the
15  contrary, none of Figs. 1, 1A, and 2-4 supports a slot consisting essentially of two
16  walls.  Mr. Cislo and/or Applicants knew or should have known that the figures or the
17  specification of the '354 Application, as originally filed, could not possibly support
18  such claim recitations.

19        36.    The USPTO relied on the misrepresentations made by Applicants and Mr.
20  Cislo and subsequently issued the '291 Patent.  The USPTO would not have issued the
21  '291 Patent, at least not with the current asserted claims in this case, had Applicants
22  and Mr. Cislo not made the intentional misrepresentations to the USPTO by supplying
23  non-existing support for the added scope in the new claims and/or claim elements.

24        37.    All of the above-described instances of misrepresentation before the
25  USPTO are clearly intentional and constitute inequitable conduct committed before the
26  USPTO, which should render the '291 Patent unenforceable.

27
28

1  **FIRST COUNTERCLAIM – ANTITRUST VIOLATION (WALKER PROCESS)**

2      38.    Counterclaimants incorporates herein by reference the allegations of

3  paragraphs 1 – 136 of Defendants' Answer and Affirmative Defenses and paragraphs

4  1-37 of Counterclaimants' Counterclaims, as if alleged herein.

5      39.    As detailed above, Applicants, through their counsel Mr. Cislo, obtained

6  the '291 Patent by knowingly and willfully misrepresenting a series of material facts to

7  the USPTO with sufficient intent to deceive the USPTO in an attempt to broaden the

8  scope of the '291 Patent beyond what was disclosed in the original disclosure.

9      40.    For example, the specification and drawings of the '354 Application as

10  originally filed is unequivocally clear that Figs. 1, 1A, and 2-4 show the identical

11  embodiment but in different perspective views.  However, recognizing that the original

12  disclosure of the '354 Application could not both overcome the cited prior art and

13  cover the competitors' products, Applicants, through and in concert with Mr. Cislo,

14  have made a series of persistent and intentional misrepresentations to the USPTO in an

15  attempt to introduce a new embodiment similar to the competitors' products and to

16  assert that the new embodiment is supported by the original disclosure.

17      41.    Since the original disclosure, including the specification and drawings, is

18  unequivocally clear that it cannot support new embodiment, Applicants and Mr.

19  Cislo's misrepresentation in their attempt to add new embodiment and to supply non-

20  existing support could not have been a mere oversight or mistake.  Rather, the

21  misrepresentations were clearly intentional and made with egregious objective to

22  deceive the USPTO.  At a minimum, Applicants and Mr. Cislo intentionally

23  disregarded their duty of candor obligations to the USPTO with a state of mind so

24  reckless with respect to the consequences of their conduct that it was the legal

25  equivalent of fraudulent intent.

26      42.    The USPTO relied on the misrepresentations made by Applicants and Mr.

27  Cislo and subsequently issued the '291 Patent.  The USPTO would not have issued the

28  '291 Patent, at least not with the current asserted claims in this case, had Applicants

and Mr. Cislo not made the intentional misrepresentations to the USPTO by supplying non-existing support for the added scope in the new claims and/or claim elements.

43.    The relevant product market with respect to Counterclaimants' First Counterclaims is the market for car seat gap fillers in which meaningful competition exists.  The relevant geographical market is the United States and its territories as a whole.

44.    On information and belief, throughout the relevant time period up to and including the present, Counter-Defendant has possessed and continues to possess the dominant market power in the relevant market in the relevant product and geographical markets.

45.    On information and belief, Counter-Defendant's product has been and continues to be a "Best Seller" in Seat Cover Accessories.  Counter-Defendant has more than $15 million in annual sales and sells its products through a wide variety of sales channels and networks, including its online store, third-party stores such as Amazon and Ebay, television home shopping network, and large national retailer chains such as Walmart, Bed & Bath, and Staples.

46.    With the fraudulently obtained '291 Patent, Counter-Defendant has unlawfully monopolized or attempted to monopolize in the relevant market by enforcing the '291 Patent against Counterclaimants in violation of the Sherman Act. Counter-Defendant knew or should have known that the '291 Patent had been obtained fraudulently and therefore unenforceable when it filed this case against Counterclaimants.

47.    Counter-Defendant's infringement lawsuit against Counterclaimants is a sham and is both objectively and subjectively baseless for reasons including the clear invalidity and unenforceability of the '291 Patent as alleged above, all of which is known or should have been known to Counter-Defendant.

48.    By asserting the '291 Patent against Counterclaimants with the knowledge that the '291 Patent is invalid and unenforceable, Counter-Defendant has engaged in

willful exclusionary conduct that has caused Counter-Defendant's monopoly power in the relevant market to be maintained, enhanced or acquired, and has significantly diminished the ability of Counterclaimants and other competitors to compete fairly in those markets.

49.     Drop Stop's action have caused, and will continue to cause, injury to Counterclaimants and the relevant market by:  (i) creating a substantial barrier to entry into the relevant market by seeking to enforce its invalid and unenforceable '291 Patent; (ii) subjecting Counterclaimants to the high costs of defending itself against a baseless patent infringement action that relies on the invalid and unenforceable '291 Patent; and (iii) creating meritless doubt in Counterclaimants' customers and potential customers, causing them to not purchase Counterclaimants' products.

50.     As a result of Counter-Defendant's unlawful conduct in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, Counterclaimants have suffered and will continue to suffer damages.  Unless Counter-Defendant's baseless patent infringement case against Counterclaimants is dismissed and the '291 Patent is declared invalid and unenforceable, Counter-Defendant is likely to succeed in acquiring or maintaining monopoly power because of its dominant position in the relevant market and competitors' diminished ability to compete fairly in the market.

## SECOND COUNTERCLAIM - DECLARTORY JUDGMENT (NON-INFRINGEMENT)

51.     Counterclaimants incorporates herein by reference the allegations of paragraphs 1 – 136 of Defendants' Answer and Affirmative Defenses and paragraphs 1-49 of Counterclaimants' Counterclaims.

52.     Counter-Defendant has alleged that Counterclaimants has infringed on the '291 Patent.

53.     Counterclaimants have denied Counter-Defendant's claim of infringement and contend that they do not infringe the '291 Patent, as set forth in paragraph 101 of Defendants' Answer and Affirmative Defenses above.

54.     An actual and justiciable controversy exists between Counter-Defendant and Counterclaimants by virtue of the allegations of Counter-Defendant's Complaint and Counterclaimants Answer concerning the alleged validity and infringement of the '291 Patent.

55.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, Counterclaimants are entitled to judgment from this Court finding that the '291 Patent is not infringed by Counterclaimants.

## THIRD COUNTERCLAIM - DECLARTORY JUDGMENT (INVALIDITY)

56.     Counterclaimants incorporates herein by reference the allegations of paragraphs 1 – 136 of Defendants' Answer and Affirmative Defenses and paragraphs 1-55 of Counterclaimants' Counterclaims.

57.     Counter-Defendant has alleged that Counterclaimants has infringed on the '291 Patent.

58.     Counterclaimants have denied Counter-Defendant's claim of infringement and contend that the '291 Patent is invalid, as set forth in paragraphs 102 through 106 of Defendants' Answer and Affirmative Defenses above.

59.     An actual and justiciable controversy exists between Counter-Defendant and Counterclaimants by virtue of the allegations of Counter-Defendant's Complaint and Counterclaimants Answer concerning the alleged validity and infringement of the '291 Patent.

60.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, Counterclaimants are entitled to judgment from this Court finding that the '291 Patent is invalid pursuant to 35 U.S.C. §§ 101, 102, 103, and/or 112.

## FOURTH COUNTERCLAIM - DECLARTORY JUDGMENT (UNENFORCEABILITY)

61.     Counterclaimants incorporates herein by reference the allegations of paragraphs 1 – 136 of Defendants' Answer and Affirmative Defenses and paragraphs 1-60 of Counterclaimants' Counterclaims.

62.     Counter-Defendant has alleged that Counterclaimants has infringed on the '291 Patent.

63.     Counterclaimants have denied Counter-Defendant's claim of infringement and contend that the '291 Patent is unenforceable, as set forth in paragraphs 107 through 132 of Defendants' Answer and Affirmative Defenses above.

64.     An actual and justiciable controversy exists between Counter-Defendant and Counterclaimants by virtue of the allegations of Counter-Defendant's Complaint and Counterclaimants Answer concerning the alleged validity and infringement of the '291 Patent.

65.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, Counterclaimants are entitled to judgment from this Court finding that the '291 Patent is unenforceable for inequitable conduct and patent misuse.

## DEMAND FOR A JURY TRIAL

66.     Pursuant to Fed. R. Civ. P. 38, Counterclaimants demand a jury trial on all claims which are triable to a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Defendants and Counterclaimants pray for judgment as follows on Plaintiff's Complaint and on Counterclaimants' Answer, Affirmative Defenses, and Counterclaims:

1.     That Drop Stop's Complaint be dismissed with prejudice and that Drop Stop takes nothing by its claims against Defendants;

2.     That judgment be entered in favor of Defendants and against Drop Stop on Drop Stop's Complaint;

3.     For entry of an Order declaring that Defendants have not infringed any claim of the '291 Patent, that the claims of the '291 Patent are invalid, that the '291

Patent is unenforceable for inequitable conduct, and that the '291 Patent is unenforceable for patent misuse;

4. That pursuant to 35 U.S.C. § 285 and/or other applicable laws, Drop Stop's conduct be found to render this an exceptional case and that Defendants be awarded its attorneys' fees incurred in connection with this action; and

5. That judgement be entered in favor of Counterclaimants on their Counterclaim for antitrust violation under Section 2 of the Sherman Act;

6. That Counterclaimants be awarded the damages to which it is entitled under the antitrust laws, including treble damages, costs, and attorney fees pursuant to 15 U.S.C. § 15(a); and

7. That Counterclaimants be awarded such other and further relief as this Court deems just and proper.

DATED:  April 28, 2017

/s/ K. Kevin Mun
Manni Li (SBN: 273984)
mli@meimark.com
Mei & Mark LLP
433 North Camden Drive, Suite 400
Beverly Hills, CA 90210
Tel: (888) 860-5678
Fax: (310) 564-2769

K. Kevin Mun (Pro Hac Vice)
kmun@meimark.com
Lei Mei (SBN: 240104)
mei@meimark.com
Andrew Riley (Pro Hac Vice)
ariley@meimark.com
Mei & Mark LLP
818 18th Street NW, Suite 410
Washington, DC 20006-3506
Tel: (888) 860-5678
Fax: (888) 706-1173

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing DEFENDANTS' FIRST AMENDED ANSWER AND COUNTERCLAIM TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT was filed electronically, and pursuant to Civil L.R. 5-3.2, was served on all interested parties in this action (i.e., served to registered ECF recipients via ECF electronic service) on April 28, 2017.

/s/ Lei Mei
Lei Mei