Guy Ruttenberg, Bar No. 207937
guy@ruttenbergiplaw.com
Bassil Madanat, Bar No. 285280
bassil@ruttenbergiplaw.com
Daniel Kadin, Bar No. 311471
daniel@ruttenbergiplaw.com
RUTTENBERG IP LAW,
A PROFESSIONAL CORPORATION
1801 Century Park East, Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
Facsimile: (310) 627-2260

*Attorneys for Plaintiff Drop Stop LLC*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DROP STOP LLC, *a California Limited Liability Company*,<br><br>                    Plaintiff,<br><br>     v.<br><br>JIAN QING "JOHNNY" ZHU, *an individual*; ZAKE INTERNATIONAL INC., *an Indiana Corporation*; ZAKE USA, *an unincorporated entity*; 3BTECH, INC., *an Indiana Corporation*; and SHENZHEN ZHOUWU TECHNOLOGY CO., LTD., *a Chinese Limited Company*.<br><br>                    Defendants. | Case No. 2:16-cv-07916 AG(SSx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' AMENDED COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES**<br><br>Date:              June 19, 2017<br>Time:             10:00 am<br>Courtroom:    10D<br><br>Discovery Cut-Off:          July 3, 2017<br>Pre-Trial Conference:     October 2, 2017<br>Trial Date:                      October 17, 2017<br><br>Judge: Hon. Andrew J. Guilford |

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND STRIKE

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................. 1

II.     FACTUAL BACKGROUND .................................................................. 2

III.    PROCEDURAL BACKGROUND ......................................................... 4

IV.     LEGAL STANDARD ........................................................................... 5

V.      ARGUMENT ....................................................................................... 5

    A.   Defendants' Amended Antitrust Counterclaim Should Be Dismissed. ... 5

       1)   Defendants Lack Antitrust Standing .......................................... 5

       2)   Defendants Fail to State a Claim for Monopolization ...................... 8

       3)   Defendants Have Not Shown This is a Sham Litigation. ................ 12

    B.   Defendants' Declaratory Judgment Counterclaims Should Be Dismissed ................................................................................................ 13

       1)   The Non-Infringement Counterclaim is Duplicative of Plaintiff's Infringement Claim, and Inadequately Pled .......................................... 13

       2)   The Invalidity Counterclaim Is Inadequately Pled ......................... 14

       3)   The Unenforceability Counterclaim Should Be Dismissed ............. 16

    C.   Defendants' "Affirmative Defenses" Should Be Stricken ..................... 16

VI.     CONCLUSION .................................................................................. 20

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND STRIKE

# TABLE OF AUTHORITIES

Cases

*578539 BC Ltd. v. Kortz*, No. CV 14-04375 MMM (MANx), 2014 WL 12572679 (C.D. Cal. Oct. 16, 2014) ................................................................ *passim*

*Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, No. C-96-0942 DLJ, 1996 WL 467273 (N.D. Cal. July 24, 1996)............................................................ 20, 21

*BlackBerry Limited v. Typo Products, LLC*, No. 14-CV-00023-WHO, 2014 WL 1867009 (N.D. Cal. May 8, 2014) ............................................... 22, 23

*C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340 (Fed. Cir. 1998) ............................. 10

*Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337 (Fed. Cir. 2007).................................... 12

*ESCO Corp. v. Cashman Equip. Co.*, 158 F. Supp. 3d 1051 (D. Nev. 2016) ..... *passim*

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009)................ 23

*Hicks v. PGA Tour, Inc.*, 165 F. Supp. 3d 898 (N.D. Cal. 2016) ............................. 13

*In re WellPoint, Inc. Out-of-Network UCR Rates Litigation*, 903 F. Supp. 2d 880 (C.D. Cal. 2012)............................................................................................ 6

*McCrary v. Elations Co., LLC*, No. EDCV 13-0242 JGB (OPx), 2013 WL 6403073 (C.D. Cal. July 12, 2013) ....................................................... 21, 22

*Novation Ventures, LLC v. J.G. Wentworth Co., LLC*, 156 F. Supp. 3d 1094 (C.D. Cal. 2015)...................................................................................... *passim*

*Ogundele v. Girl Scouts-Arizona Cactus Pine Council, Inc.*, No. CV-10-1013-PHX-GMS, 2011 WL 1770784 (D. Ariz. May 10, 2011) ............................................. 21

RAH Color Techs. LLC v. Ricoh USA Inc., 194 F. Supp. 3d 346 (E.D. Pa. 2016) ... 1, 16, 17

Roland Corp. v. Inmusicbrands, Inc. No. 2:16-CV-06256-CBM-AJWx, 2017 WL 513924 (C.D. Cal. Jan. 26, 2017) ........................................................... *passim*

Sliding Door Co. v. KLS Doors, LLC, No. EDVC 13-00196 JGB (DTBx), 2013 WL 2090298 (C.D. Cal. May 1, 2013) ........................................................... *passim*

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND STRIKE

*Solarcity Corp. v. Sunpower Corp.*, No. 16-CV-05509-LHK, 2017 WL 1739169
(N.D. Cal. May 4, 2017) ....................................................................... 18

*United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 177 F. Supp. 3d 1183 (N.D.
Cal. 2016) ............................................................................................. 13

*Vinci v. Waste Mgmt., Inc.*, 80 F.3d 1372 (9th Cir. 1996) ............................ 7

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND STRIKE

## I.   __INTRODUCTION__

Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff Drop Stop, LLC ("Drop Stop" or "Plaintiff") moves to dismiss the amended monopolization and declaratory judgment (non-infringement, invalidity and unenforceability) counterclaims of Defendants Jian Qing "Johnny" Zhu, Zake International, Inc., Zake USA, 3BTech, Inc. and Shenzhen Zhouwu Technology Co., Ltd. (collectively, "Defendants").  Drop Stop also moves to strike all of Defendants' amended affirmative defenses under Fed. R. Civ. P. 12(f).

As an initial matter, Defendants lack antitrust standing requisite to bring their first counterclaim.  Further, they fail to plead these counterclaims with sufficient particularity, and the scant facts they plead do not even support cognizable antitrust claims.

Additionally, Defendants' declaratory judgment counterclaims for non-infringement, invalidity and unenforceability fail to meet the pleading standards required under *Twombly* and *Iqbal*.  *See Roland Corp. v. Inmusicbrands, Inc.* No. 2:16-CV-06256-CBM-AJWx, 2017 WL 513924, at *2-*3 (C.D. Cal. Jan. 26, 2017); *RAH Color Techs. LLC v. Ricoh USA Inc.*, 194 F. Supp. 3d 346, 350-51 (E.D. Pa. 2016).  In any event, the non-infringement counterclaim is duplicative of Drop Stop's infringement claim.

Lastly, many of Defendants' asserted "affirmative defenses" are not cognizable.  The rest are insufficiently pled and contain improper settlement discussions.  They should be stricken.

Defendants were already given the opportunity to amend their counterclaims and affirmative defenses.  (Dkt. Nos. 54, 57).  However, even after amendment, they remain frivolous, conclusory and severely lacking in factual support.  Given Defendants' ***failure to remedy these deficiencies***, Drop Stop respectfully requests that all four of Defendants' counterclaims be dismissed, and that all eight affirmative defenses be stricken—***with prejudice***.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND STRIKE

## II.    FACTUAL BACKGROUND

### *Plaintiff and the Drop Stop Invention*

Entrepreneurs Jeffrey Simon and Marc Newburger are the inventors of an apparatus that obstructs the gap between an automobile's front seats and center console, thereby preventing items from becoming lodged in that small space.  (Dkt. No. 63, Complaint ¶¶ 1, 23).  Known as the Drop Stop®, this apparatus also reduces traffic accidents by keeping drivers focused on the road rather than looking for cell phones and other objects that otherwise fall between the seats.  (*Id.* ¶ 23).  In 2012, the U.S. Patent and Trademark Office issued U.S. Patent No. 8,267,291 for an "Apparatus for Closing Gaps" (the "'291 Patent") to Simon and Newburger.  (*Id.* ¶ 24).

Simon and Newburger have developed, marketed and distributed the Drop Stop® device through Drop Stop LLC ("Drop Stop").  (*See id.* ¶ 23).  Drop Stop is the owner by assignment of the '291 Patent, which covers the Drop Stop® device. (*Id.* ¶ 29).  Since receiving the '291 Patent, Drop Stop has prominently displayed the patent's number on the device itself, on the box and on other marketing and advertising materials.  (*Id.* ¶¶ 28, 73).  In fact, when Messrs. Simon and Newburger (on behalf of their company) promoted the Drop Stop® device on the popular ABC series "Shark Tank" in March 2013, they specifically touted their patent to the show's well-known angel investors and to millions of viewers around the world.  (*See id.* ¶ 25).  Indeed, the Drop Stop® has appeared on approximately half a dozen additional "Shark Tank" episodes and related features, as well as dozens of re-runs in syndication across the country.  (*Id.* ¶ 26).

Messrs. Simon and Newburger (on behalf of their company) have continued promoting the Drop Stop® device on several other prominent television and news programs, including Oprah.com, the Howard Stern Show, the View, the Queen Latifah Show, ABC7 News, CBS and KCAL News.  (*Id.*).  At all times, they represented that the Drop Stop® product has received patent protection in the U.S.

2

(*See id.* ¶ 73).  This is in addition to the clear marking on the device and packaging. (*Id.* ¶¶ 28, 73).

### *Defendants and Their Infringement*

Defendants sell Drop Stop® knock-offs that infringe the '291 Patent.  (*Id.* ¶¶ 51-54).  Specifically, Defendants sell and offer for sale the "ChiTronic Car Vehicle Seat Hand Brake Gap Filler Pad," which is intended to obstruct the gap between an automobile's front seats and center console in a manner similar to that of the Drop Stop® device.  (*Id.* ¶¶ 51, 54).  They sell the ChiTronic through popular online marketplaces such as Amazon.com, eBay.com and Alibaba.com using aliases and disguises, including "Also Popular," "Coolgate," "BOTU," "ChiTronic," Zake International, Inc., Zake USA, 3BTech, Inc., and Shenzhen Zhouwu Technology Co., Ltd. (and likely others).  (*Id.* ¶¶ 52-55).  As with many other products sold by the Defendants, the ChiTronic appears to be made in and imported from China.

After first noticing Defendants' infringing products on Amazon in March 2015, Drop Stop sent a cease-and-desist letter to "Also Popular" through the Amazon web portal.  (*See id.* ¶ 75).  Defendants temporarily removed the ChiTronic product, at least through the "Also Popular" listing, but relisted it days later through that and other listings.  (*Id.* ¶ 76).  Defendants ignored Drop Stop's subsequent cease-and-desist letters and continued selling the ChiTronic under various aliases, including "Also Popular," "Coolgate," "BOTU," "ChiTronic."  (*See id.* ¶ 77).

Drop Stop has repeatedly approached Amazon, demanding that the company take down infringing products and provide information concerning the online vendors.  For the most part, Amazon declined to cooperate, indicating that the online platform does not police patent infringement disputes.  After repeated inquiries, however, on August 8, 2016, Amazon provided a list of third-party sellers, email addresses and related Amazon Standard Identification Numbers ("ASINs"), including ASINs (B00SFKMN8O), associated with the name "Jian Qing Zhu/Also Popular" and the email address alsopopular@zakeusa.com.  Using this information (along with

3

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND STRIKE

the zakeusa.com websites), Drop Stop connected the infringing sales with Mr. Jian Qing Zhu and his various companies, including Zake USA, Zake International, Inc., 3BTech, Inc. and their Chinese affiliates.

## III.   PROCEDURAL BACKGROUND

Plaintiff filed suit for patent infringement against the Defendants on October 24, 2016.  (Dkt. No. 1).  Drop Stop's counsel and Defendants' counsel preliminarily discussed Defendants accepting/waiving service, but Defendants refused to sign a jointly drafted stipulation and disappeared.  They also failed to answer the Complaint. The Clerk entered Default against all Defendants on December 2, 2016.  (Dkt. No. 20).  Defendants moved to set aside entry of default on December 21, 2016, purporting that they were improperly served.  (Dkt. No. 23).  These arguments were rejected in the Court's January 30, 2017 Order, which deemed that all Defendants were properly served as of November 9, 2016.  (Dkt. No. 33 at 4).  The Court set aside entry of default, but also ordered Defendants to pay $5,000 in sanctions to Plaintiff for delays and costs of opposing Defendants' motion.  (*Id.*).  More than a month later, Defendants finally paid Plaintiff on March 13, 2017.

Defendants answered the Complaint on February 28, 2017, raising several frivolous defenses and counterclaims.  (Dkt. No. 38).  Defendants amended their answer, affirmative defenses and counterclaims on April 28, 2017.  (Dkt. No. 60). After the parties filed a joint stipulation, (Dkt. No. 62), Drop Stop filed its First Amended Complaint on May 8, 2017.  (Dkt. No. 63).[1]

---

[1] Defendants have taken the position that their First Amended Answer and Counterclaims are no longer operative in light of Plaintiff's First Amended Complaint.  (Ex. 1).  The First Amended Complaint ("FAC"), however, does not change any of the allegations against the original Defendants.  Rather, the FAC simply (i) adds a new defendant that was disclosed only days earlier, and (ii) clarifies that the theory of infringement includes both literal infringement and infringement under the doctrine of equivalents.  More importantly, this Court's Order (Dkt. No. 57 at 2) specifically directed Plaintiff to file the motion no later than May 19, 2017, and cautions against any further delay.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND STRIKE

1   IV.   **LEGAL STANDARD**

2          Pursuant to Fed. R. Civ. P. 12(b)(6), a court may dismiss a claim or

3   counterclaim that fails to give fair notice to the opposing party and enable the

4   opposing party to defend itself effectively.  *Roland Corp. v. Inmusicbrands, Inc.* No.

5   2:16-CV-06256-CBM-AJWx, 2017 WL 513924, at *1 (C.D. Cal. Jan. 26, 2017);

6   *Sliding Door Co. v. KLS Doors, LLC*, No. EDVC 13-00196 JGB (DTBx), 2013 WL

7   2090298, at *4 (C.D. Cal. May 1, 2013).  Counterclaims that merely recite the

8   elements of a cause of action or otherwise contain insufficient allegations of

9   underlying facts must be dismissed.  *Roland Corp.*, 2017 WL 513924, at *1.

10         Under Fed. R. Civ. P. 12(f), a court may strike a "redundant, immaterial,

11  impertinent or scandalous matter" in a pleading.  *Roland Corp.*, 2017 WL 513924, at

12  *1 (quoting Fed. R. Civ. P. 12(f)).  This applies to affirmative defenses.  *Id.* at *2.

13  An affirmative defense may be insufficient as a matter of pleading if it fails to give

14  the plaintiff fair notice of the defense asserted, or it may be insufficient as a matter of

15  law.  *578539 BC Ltd. v. Kortz*, No. CV 14-04375 MMM (MANx), 2014 WL

16  12572679, at *7 (C.D. Cal. Oct. 16, 2014).

17  V.   **ARGUMENT**

18         **A.   Defendants' Amended Antitrust Counterclaim Should Be Dismissed.**

19         Defendants' amended counterclaim for monopolization in violation of the

20  Sherman Act (Counterclaim 1) is frivolous, conclusory and meritless.  It should be

21  dismissed.

22              1)   Defendants Lack Antitrust Standing

23         As a threshold matter, a party asserting claims under the Sherman Act must

24  have antitrust standing.  *Novation Ventures, LLC v. J.G. Wentworth Co., LLC*, 156 F.

25  Supp. 3d 1094, 1100 (C.D. Cal. 2015) (dismissing for failure to allege antitrust

26  standing and injury).  To have antitrust standing, the party must establish *antitrust*

27  *injury*, consisting of (1) unlawful conduct, (2) causing an injury to the plaintiff, (3)

28  that flows from that which makes the conduct unlawful, and (4) that is of the type the

5

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND STRIKE

1   antitrust laws were designed to prevent. *Id.* at 1100. The Ninth Circuit also requires

2   that the allegedly injured party be a participant in the same market as the defendant.

3   *In re WellPoint, Inc. Out-of-Network UCR Rates Litigation*, 903 F. Supp. 2d 880, 903

4   (C.D. Cal. 2012) (dismissing for failure to allege antitrust injury). "[C]onduct [that]

5   harms the plaintiff without adversely affecting competition generally" *does not*

6   establish antitrust injury. *Novation Ventures, LLC*, 156 F. Supp. 3d at 1100.

7       Here, Defendants fail to satisfy nearly every requirement for pleading antitrust

8   injury.

9       ### *Defendants Fail to Allege That They Are Market Participants*

10      Only a market participant can bring a claim for antitrust. *Vinci v. Waste*

11  *Mgmt., Inc.*, 80 F.3d 1372, 1376 (9th Cir. 1996). Here, although Drop Stop alleges

12  that each Defendant is selling the accused products, Defendants refuse to concede the

13  point. In fact, they apparently deny selling the accused products, and at least two

14  Defendants have brought a motion to dismiss on this very ground. (*See* Dkt. No. 64).

15  In any event, Defendants do not allege that they are participants in any market that

16  has been allegedly monopolized. Accordingly, their counterclaims should be

17  dismissed. *In re WellPoint, Inc. Out-of-Network UCR Rates Litigation*, 903 F. Supp.

18  2d 906-08.

19      ### *Defendants Fail to Plead Unlawful Conduct*

20      Defendants also do not allege any unlawful conduct by Drop Stop. "[A] patent

21  owner who brings suit to enforce the statutory right to exclude others from making,

22  using, or selling the claimed invention is exempt from the antitrust laws, even though

23  such a suit may have an anticompetitive effect . . ." *ESCO Corp. v. Cashman Equip.*

24  *Co.*, 158 F. Supp. 3d 1051, 1073 (D. Nev. 2016) (dismissing action for failure to meet

25  9(b) standard). Lacking any evidence of unlawful conduct by Drop Stop, Defendants

26  allege that Drop Stop "has unlawfully monopolized or attempted to monopolize in the

27  relevant market by enforcing the '291 Patent . . . in violation of the Sherman Act."

28  (Dkt. No. 60 at 33 ¶ 46).

6

To support this, Defendants—in conclusory fashion—accuse Drop Stop of defrauding the USPTO in procuring the patent. (*Id.* ¶¶ 46-48).  As discussed further below, their conclusory fraud allegations do not meet Fed. R. Civ. P. 9(b)'s heightened pleading standard that attaches to fraud-based antitrust actions.  *ESCO Corp.*, 158 F. Supp. 3d at 1073.  For example, Defendants include conclusory allegations that Drop Stop "obtained the '291 Patent by knowingly and willfully misrepresenting a series of material facts to the USPTO with sufficient intent to deceive the USPTO," that these "misrepresentations were clearly intentional and made with egregious objective [*sic*] to deceive the USPTO" and that Drop Stop "disregarded [its] duty of candor obligations to the USPTO with a state of mind so reckless with respect to the consequences of [its] conduct that it was the legal equivalent of fraudulent intent."  (Dkt. No. 60 at 32 ¶¶ 39, 41).

Defendants incorporate by reference their conclusory allegations that Drop Stop violated the written description requirement of 35 U.S.C. § 112, but do not articulate what misrepresentations Drop Stop purportedly made to the USPTO that caused it to improperly issue the '291 Patent.  (Dkt. No. 60 at ¶¶ 13, 26, 28, 30-37, 40, 46, 48).  The Defendants' fraud and "unlawful conduct" allegations are deficient.  Defendants have not pled any unlawful conduct.

### ***Defendants Fail to Plead Injury***

They also fail to establish any injury flowing from any purported unlawful conduct, let alone any injury at all.  (*See* Dkt. No. 60 at 34 ¶ 49).  Even under a strained application of the antitrust laws, Defendants' alleged injuries are not cognizable.  Their "injuries" consist of "substantial barrier[s] to entry," "high costs of defending itself [*sic*] against a baseless patent infringement action," and "creating meritless doubt in Counterclaimants' customers and potential customers . . ." (*Id.*).  These are insufficient.

First, Defendants provide no facts showing how the purportedly "substantial barrier[s] to entry" have foreclosed them from competing in the relevant product

7

market. They have not even articulated *what* these supposed barriers are. These insufficiencies alone warrant dismissal. *Novation Ventures, LLC*, 156 F. Supp. 3d at 1102 (no antitrust injury for failure to "plead any *facts* demonstrating that it has actually been foreclosed from the opportunity of competing in the relevant product market.").

Defendants' "injury" of "high costs of [defense]" is conclusory. They do not explain what costs they have incurred, nor do they explain how the infringement action is baseless. (*See* Dkt. No. 60 at 34 ¶ 49).

Lastly, Defendants' reliance on "doubt in Counterclaimants' customers and potential customers" cannot save their deficient pleading. "[H]arm to consumers . . . is not an injury-in-fact that competitors suffer." *Novation Ventures, LLC*, 156 F. Supp. 3d at 1102. In any event, they have not provided *any facts* showing how their customers or potential customers have been confused. (Dkt. No. 60 at 34 ¶ 49).

Because Defendants fail to allege any unlawful conduct or injury, it follows that they have not shown their injury flows from that which makes the conduct unlawful, or is of the type the antitrust laws were designed to prevent. In light of these insufficient pleadings, Defendants lack antitrust standing required to assert claims under the Sherman Act.

2) Defendants Fail to State a Claim for Monopolization

"A party is ordinarily exempt from antitrust liability for bringing a lawsuit against a competitor." *ESCO Corp.*, 158 F. Supp. 3d at 1072. Indeed, such "*Noerr-Pennington* immunity" shields patent-holders from antitrust liability for asserting their patent rights against infringers. *Id.* at 1073. One exception is "*Walker Process* fraud," which must be pled with heightened particularity under Fed. R. Civ. P. 9(b). *ESCO Corp.*, 158 F. Supp. 3d at 1073 (*Walker Process* claims "must be done with the specificity required by Rule 9(b)."); *see also C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1368 (Fed. Cir. 1998).

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND STRIKE

To state a *Walker Process* claim, a party must allege facts sufficient to show (1) the patent was procured by knowing or willful fraud on the USPTO; (2) the party was aware of the fraud when enforcing the patent; (3) independent evidence of a clear intent to deceive the examiner exists; and (4) unambiguous (but-for) evidence of reliance exists. *ESCO Corp.*, 158 F. Supp. 3d at 1073. In addition, the pleading must state an antitrust claim under the Ninth Circuit's antitrust law. *Id.*, n.11.

Defendants fail to allege facts sufficient to satisfy the *Walker Process* requirements, as well as the Ninth Circuit antitrust requirements. As an initial matter, Defendants' failure to establish any antitrust injury, a required element for monopolization, should foreclose this frivolous claim outright. *See id.* (listing antitrust injury as element of monopolization).

### ***Defendants Fail to Plead Walker Process Fraud***

Defendants' allegations insufficiently plead *at least* the "what, where, when, or how" necessary to survive dismissal. *ESCO Corp.*, 158 F. Supp. 3d at 1073-74.

For example, Defendants do not articulate—in an intelligible, non-conclusory manner—any misrepresentation made to the USPTO. (*See* Dkt. No. 60 ¶¶ 13, 26, 28, 30-37, 40, 46, 48). Apparently, Drop Stop's former patent prosecution attorney "added numerous features in the specification and the claims followed by a serious [*sic*] of allegations relating to their alleged support in the original disclosure . . . [that were] not only false but also knowing, intentional misrepresentation [*sic*] . . ." (*Id.* at 31 ¶ 34). Defendants then contend that Drop Stop "made a series of persistent and intentional misrepresentations to the USPTO in an attempt to introduce a new embodiment to the [patent]." (*Id.* at 32 ¶ 40). Defendants do not articulate what these purported misrepresentations were, but go on to allege that Drop Stop's "misrepresentations were clearly intentional and made with egregious objective [*sic*] to deceive the USPTO." (*Id.* at 32 ¶ 41). According to Defendants, it is "unequivocally clear" that these (unarticulated) misrepresentations "could not possibly have been a mere oversight or mistake." (*Id.* at 29 ¶ 31). This is nonsense.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND STRIKE

1    Defendants hang their fraud allegations on unsubstantiated misrepresentations

2  of an unintelligible distinction between "circular" versus "longitudinal" or "oval"

3  slots. (*Id.* at 31 ¶ 34). Defendants allege—without any factual support—that Drop

4  Stop broadened the scope of the '291 Patent by amending its claims to include

5  "longitudinal" or "oval" slots, but do not explain (i) what actual misrepresentations

6  Drop Stop allegedly made to the USPTO; (ii) how a possible distinction between

7  "circular" and "longitudinal" or "oval" slots is material; or (iii) how the USPTO

8  relied on any purported misrepresentation. (*Id.* ¶¶ 29-37). These failures further

9  doom Defendants' claims. *ESCO Corp.*, 158 F. Supp. 3d at 1074; *Dippin' Dots, Inc.*

10 *v. Mosey*, 476 F.3d 1337, 1347 (Fed. Cir. 2007).

11    Further, the limited facts Defendants do allege do not give rise to a reasonable

12 inference of scienter. Indeed, "[c]onclusory assertions that [a party] acted

13 intentionally, knowingly, or otherwise, without accompanying facts that imply a

14 deliberate intent to defraud the PTO, ***do not meet the pleading standard***." *ESCO*

15 *Corp.*, 158 F. Supp. 3d at 1074 (emphasis added; internal citations omitted).

16 Defendants assert that Drop Stop "misrepresented with deceptive intent," made

17 "misrepresentations [that] were clearly intentional and made with egregious objective

18 to deceive the USPTO" and that the alleged misrepresentations "could not possibly

19 have been a mere oversight or mistake." (Dkt. No. 60 ¶¶ 31, 35, 41). These

20 arguments are circular, conclusory and lacking in ***any independent evidence***

21 sufficient to reveal Drop Stop's alleged scienter. *ESCO Corp.*, 158 F. Supp. 3d at

22 1074. Defendants fail to state a *Walker Process* claim.

23    ### ***Defendants Fail to State an Antitrust Claim Under Ninth Circuit Law***

24    Defendants' failure to state a *Walker Process* claim obviates the need to

25 address the insufficiencies plaguing their antitrust pleading. *Dippin' Dots, Inc.*, 476

26 F.3d at 1348-49; *ESCO Corp.*, 158 F. Supp. 3d at 1073-75 (dismissing after failure to

27 allege *Walker Process* elements). In any event, Defendants still fail to state an

28 antitrust claim under governing Ninth Circuit law. To state a claim for

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND STRIKE

monopolization in the Ninth Circuit, a party must establish that (1) the defendant possesses monopoly power in the relevant market; (2) the defendant willfully acquired or maintained that power; and (3) the defendant's conduct has caused antitrust injury. *ESCO Corp.*, 158 F. Supp. 3d at 1073, n. 11.

First, Defendants do not properly allege that Drop Stop possesses monopoly power in the relevant market. "A mere showing of substantial or even dominant market share alone cannot establish market power sufficient to carry out a predatory scheme." *United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, 177 F. Supp. 3d 1183, 1192-93 (N.D. Cal. 2016) (plaintiff failed to allege market power for attempted monopolization claim). Defendants merely allege that Drop Stop "has been and continues to be a 'Best Seller' in Seat Cover Accessories" and that Drop Stop "has more than $15 million in annual sales through a variety of sales channels and networks." (Dkt. No. 60 at 33 ¶ 45). Defendants have established Drop Stop's popularity, but not that Drop Stop has effectively barred competitors from entering the market or controlled prices. *United Energy Trading, LLC*, 177 F. Supp. 3d at 1192-93; *Hicks v. PGA Tour, Inc.*, 165 F. Supp. 3d 898, 908-09 (N.D. Cal. 2016) (antitrust laws only implicated if seller can charge artificially high prices and consumers have no reasonable opportunity to turn to another product). Defendants do not articulate how Drop Stop "has significantly diminished the ability of Counterclaimants and other competitors to compete fairly in [the relevant] markets." (Dkt. No. 60 at 34 ¶ 48). These conclusory allegations fail.

Next, Defendants insufficiently allege that Drop Stop willfully acquired or maintained any purported monopoly power, "*as distinguished from* growth or development as a consequence of a superior product, business acumen, or historic accident." *Novation Ventures, LLC*, 156 F. Supp. 3d at 1103-04 (italics in original). Defendants do not articulate how Drop Stop became "Best Seller" through anticompetitive means other than their *Walker Process* fraud allegations, which fail.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND STRIKE

1    Lastly, as discussed above, Defendants fail to establish antitrust injury.

2  Indeed, the only theoretically cognizable injury they have alleged, "substantial

3  barrier[s] to entry," is insufficiently pled because Defendants do not articulate *what*

4  these barriers are.  (Dkt. No. 60 at 34 ¶¶ 48-49).  Such allegations are insufficient.

5  *Novation Ventures, LLC*, 156 F. Supp. 3d at 1102.

6    In sum, Defendants fail to state a claim for monopolization.

7            3)  <u>Defendants Have Not Shown This is a Sham Litigation.</u>

8    "Sham litigation" must be (i) objectively baseless in the sense that no

9  reasonable litigant could realistically expect success on the merits; and (ii) motivated

10  by a desire to interfere directly with the business relationship of a competitor.  *ESCO*

11  *Corp.*, 158 F. Supp. 3d at 1075.  This is a difficult standard to meet because

12  "pursuing litigation pursuant to duly issued patents does not constitute an antitrust

13  violation even if the specific intent and purpose is to exclude competitors from the

14  patent[ed] property, as this is the monopoly inherent in the patent."  *Id.* at 1076.

15    Here, Defendants again offer conclusory allegations that fall well short of the

16  pleading standard.  Defendants contend that Drop Stop's infringement action "is a

17  sham and is both objectively and subjectively baseless for reasons including the clear

18  invalidity and unenforceability of the '291 Patent as alleged above, all of which is

19  known or should have been known to [Drop Stop]."  (Dkt. No. 60 at 33 ¶ 47).

20    These conclusory allegations fail.  Indeed, they "may demonstrate that [Drop

21  Stop] has taken an aggressive position in the enforcement of its patents [but] the

22  pleadings do not support an inference that this litigation is objectively baseless such

23  that [Drop Stop] could not realistically expect success on the merits."  *ESCO Corp.*,

24  158 F. Supp. 3d at 1075 (internal quotations omitted).  Defendants' sham litigation

25  allegations are tied to their failed *Walker Process* allegations of fraud on the USPTO.

26  (Dkt. No. 60 at 33 ¶¶ 46-47).  This failure forecloses Defendants' "sham litigation"

27  allegation as well.  *ESCO Corp.*, 158 F. Supp. 3d at 1076.

28

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND STRIKE

Defendants' fallback theory of sham litigation cannot salvage Defendants' insufficiently pled counterclaim. Given that Defendants have already had an opportunity to amend, Counterclaim 1 should be dismissed ***with prejudice***.

**B.   Defendants' Declaratory Judgment Counterclaims Should Be Dismissed**

Non-infringement and invalidity counterclaims that fail to give fair notice to the opposing party and enable the opposing party to defend itself effectively are insufficient. *Roland Corp. v. Inmusicbrands, Inc.*, No. 2:16-CV-062560CBM-AJWx, 2017 WL 513924, at *1 (C.D. Cal. Jan. 26, 2017).

1)   <u>The Non-Infringement Counterclaim is Duplicative of Plaintiff's Infringement Claim, and Inadequately Pled</u>

As an initial matter, "Defendants' request for declaratory judgment for non-infringement of the ['291 Patent] is duplicative of Plaintiff's first cause of action" for infringement and should be dismissed. *Sliding Door Co. v. KLS Doors, LLC*, No. EDVC 13-00196 JGB (DTBx), 2013 WL 2090298, at *3-*4 (C.D. Cal. May 1, 2013) (dismissing duplicative non-infringement counterclaim). Because the issue of infringement is already before the Court, "Defendants' [second] Claim for Relief does not serve any useful purpose." *Id.* Defendants should not be allowed to waste more of Drop Stop's, or this Court's time, by rehashing the same infringement issue. *Id.* This counterclaim should be dismissed for this reason alone.

In any event, Defendants also fail to adequately plead a non-infringement counterclaim. Defendants allege that "Counterclaimants have denied Counter-Defendant's claim of infringement and contend that they do not infringe the '291 Patent, as set forth in paragraph 101 of Defendants' [Amended] Answer and Affirmative Defenses above." (Dkt. No. 60 at 34 ¶ 53). Paragraph 101, which is Defendants' non-infringement affirmative defense, states that "Defendants do not infringe, directly or indirectly, any claims of the '291 Patent, either literally or under the doctrine of equivalents, willfully or otherwise." (Dkt. No. 60 at 10 ¶ 101).

13

Even taken together, these allegations are conclusory and nonsensical.  They also "lack the plausibility and particularized facts required to sufficiently state a claim for relief."  *RAH Color Techs. LLC v. Ricoh USA, Inc.*, 194 F. Supp. 3d 346, 351-53 (E.D. Pa. 2016) (dismissing insufficiently pled non-infringement counterclaim).  Further, as discussed below, non-infringement is not an affirmative defense.  *Roland Corp.*, 2017 WL 513924, at *2; *578539 BC Ltd.*, 2014 WL 12572679, at *7-*8.  Defendants cannot tether their insufficient non-infringement counterclaim to a non-cognizable non-infringement affirmative defense.  Defendants' non-infringement counterclaim should be dismissed with prejudice.

### 2) <u>The Invalidity Counterclaim Is Inadequately Pled</u>

Conclusory invalidity counterclaims that fail to state how the patentability requirements are not met, or otherwise fail to give the Plaintiff notice of the basis for the Defendants' counterclaims, are regularly dismissed.  *Roland Corp. v. Inmusicbrands, Inc.*, No. 2:16-CV-062560CBM-AJWx, 2017 WL 513924, at *2 (C.D. Cal. Jan. 26, 2017) (dismissing conclusory declaratory judgment counterclaim that patent was "invalid for failure to comply with the patent laws, including but not limited to, 35 U.S.C. §§ 102, 103 and/or 112."); *see also Sliding Door Co.*, 2013 WL 2090298, at *4 (dismissing insufficiently pled counterclaim for declaratory relief of invalidity); *RAH Color Techs. LLC*, 194 F. Supp. 3d at 350-51 (dismissing insufficiently pled counterclaim that "The claims of the [Asserted Patent] are invalid for failure to satisfy one or more of the conditions for patentability specified in Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, 112, and 132.").

Here, Defendants allege that "Counterclaimants have denied Counter-Defendant's claim of infringement and contend that the '291 Patent is invalid, as set forth in paragraphs 102 through 106 of Defendants' [Amended] Answer and Affirmative Defenses above."  (Dkt. No. 60 at 35 ¶ 58).  Paragraphs 102-06 allege that "[e]ach and every claim of the '291 patent is invalid for failure to comply with

14

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND STRIKE

one or more of the conditions for patentability, including but not limited to inventorship, utility, novelty, non-obviousness, enablement, indefiniteness, and written description, as set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112." (Dkt. No. 60 at 10 ¶ 102). Such allegations fail to give Drop Stop notice of the actual basis of Defendants' allegation. *Roland Corp.*, 2017 WL 513924, at \*2; *Sliding Door Co.*, 2013 WL 2090298, at \*4. This counterclaim should be dismissed for this reason alone.

Defendants then offer conclusory and unintelligible allegations that the '291 Patent does not "comply with the written description requirements." (Dkt. No. 60 at 10 ¶ 103). For example, they allege that "[t]he prosecution history of the '291 Patent clearly reflects that the claims of the '291 Patent lack adequate written description support in the original disclosure." (*Id.*). Defendants again fixate on the "circular" versus "oval" or "longitudinal" slot distinction, but do not explain ***how or why*** "[n]either the specification nor the drawings of the original application provides any support for the recitations added to the April 27, 2017 Response." (*Id.* ¶ 104). Rather, they offer conclusory allegations such as, "it is clearly evident from the original drawings that" the "oval" slot is not supported. (*Id.* ¶ 105). These conclusory allegations are insufficient to survive dismissal.

Finally, the Defendants' so-called written description arguments are without merit, as shown by the face of the patent. *See Solarcity Corp. v. Sunpower Corp.*, No. 16-CV-05509-LHK, 2017 WL 1739169, at \*2 (N.D. Cal. May 4, 2017) (court may consider documents that are in the public record in considering a Rule 12(b)(6) motion). Essentially, Defendants contend that the claim language relating to a slot that is "aligned longitudinally," "generally oval in shape," and/or "[having] an open configuration . . . and a partially closed configuration" lacks support in the

specification.  (Dkt. No. 60 ¶ 105).  As an initial matter, these elements are not in all claims of the patents, so it is unclear what claims Defendants challenge on this basis.  In any event, each of these arguments is without merit.  Figures 2 and 3 in the patent



FIG. 2

(which are the same as in the original application) clearly show the "slot" (labeled "2") is ***oval*** in shape.  (Dkt. No. 63-1, '291 Patent at Fig. 2).  The slot is also shown as "open" in Figure 2 when engaged with the safety belt, and "partially closed" in Figure 1 when disengaged from the safety belt.  The same figures also show the alignment of the slot with the car seat and elongated member.  In short, Defendants' written description arguments are without merit.

3)  <u>The Unenforceability Counterclaim Should Be Dismissed</u>

Defendants' fourth counterclaim for declaratory judgment of unenforceability of the '291 Patent wholly relies on, and incorporates by reference, Defendants' patent misuse and inequitable conduct affirmative defenses.  (Dkt. No. 60 at 36 ¶ 63).  As discussed below, both of these affirmative defenses contain improper and insufficient allegations, and should be stricken.  Accordingly, the unenforceability counterclaim should also be dismissed.

**C.   Defendants' "Affirmative Defenses" Should Be Stricken**

Defendants assert eight frivolous "affirmative defenses" in their amended answer.  (Dkt. No. 60 at 10 ¶ 101-21 ¶ 135).  However, most of these are not cognizable affirmative defenses as a matter of law, include improper material and are insufficiently pled.  All of these should be stricken.

Defendants' ***first affirmative defense*** for failure to state a claim should be stricken because this is *not an affirmative defense*.  *Roland Corp.*, 2017 WL 513924, at *2 (striking asserted affirmative defense of failure to state a claim because it is not an affirmative defense); *578539 BC Ltd. v. Kortz*, No. CV 14-0437 MMM (MANx),

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND STRIKE

1    2014 WL 12572679, at *8 (C.D. Cal. Oct. 16, 2014) (striking asserted affirmative

2    defense of failure to state a claim because it "addresses the elements of plaintiff's

3    claims and is properly raised through denial of plaintiff's allegations or an

4    appropriate motion.").  And in any event, Drop Stop has alleged the essential

5    elements of patent infringement.  (Dkt. No. 1 at ¶¶ 76-94).  Either way, Defendants'

6    "affirmative defense" should be stricken.  *Advanced Cardiovascular Sys., Inc. v.*

7    *Medtronic, Inc.*, No. C-96-0942 DLJ, 1996 WL 467273, at *3 (N.D. Cal. July 24,

8    1996) (striking "failure to state a claim" affirmative defense where plaintiff properly

9    pled patent infringement).

10        Defendants' ***second affirmative defense*** (Non-Infringement) is also not an

11   affirmative defense and should be stricken *with prejudice*.  *Roland Corp.*, 2017 WL

12   513924, at *2; *578539 BC Ltd.*, 2014 WL 12572679, at *7-*8.

13        Defendants' ***third affirmative defense*** (Invalidity) fails for the same reasons as

14   Defendants' third counterclaim discussed above, namely that it is conclusory and

15   fails to give Drop Stop notice of how the '291 Patent is purportedly invalid.  *Id.*; *see*

16   *also Advanced Cardiovascular Sys., Inc.*, 1996 WL 467273, at *3.

17        Defendants' ***fourth affirmative defense*** (Patent Misuse) should be stricken for

18   several reasons.

19        • ***First***, it improperly includes the contents of confidential settlement and

20            mediation discussions.  (Dkt. No. 60 at 11-12 ¶¶ 107-09).  For example,

21            Defendants specifically refer to purported "condition[s] for settlement"

22            offered by Drop Stop, (*Id.* ¶ 107), the contents of a confidential February

23            16, 2017 settlement letter sent by Drop Stop to Defendants, (*Id.* ¶ 108), and

24            the contents of the Court-appointed mediation discussions.  (*Id.* ¶ 109).

25            "Numerous courts have used Rule 12(f) to strike allegations from

26            complaints that detail settlement negotiations within the ambit of Rule

27            408."  *McCrary v. Elations Co., LLC*, No. EDCV 13-0242 JGB (OPx),

28            2013 WL 6403073, at *5-*6 (C.D. Cal. July 12, 2013) (striking portions of

17

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND STRIKE

complaint containing settlement contents and discussions); *Ogundele v. Girl Scouts-Arizona Cactus Pine Council, Inc.*, No. CV-10-1013-PHX-GMS, 2011 WL 1770784, at *8-*9 (D. Ariz. May 10, 2011) (same).  Defendants' ostensible use of these confidential settlement and mediation discussions to establish Drop Stop's alleged liability for patent misuse is inappropriate and contrary to public policy.  *McCrary*, 2013 WL 6403073, at *6.  Given that Defendants' only support for this defense comes from the settlement and mediation discussions, the defense should be stricken entirely.

- **Second**, putting aside Defendants' improper use of settlement discussions, the affirmative defense consists of conclusory allegations bereft of any factual support.  (Dkt. No. 60 at 12 ¶¶ 108-11).  It should be dismissed for this reason as well.  *BlackBerry Limited v. Typo Products, LLC*, No. 14-CV-00023-WHO, 2014 WL 1867009, at *4-*5 (N.D. Cal. May 8, 2014) (dismissing insufficiently pled patent misuse claim); *ESCO Corp.*, 158 F. Supp. 3d at 1068 (patent misuse insufficiently pled as affirmative defense and counterclaim).

- **Third**, the affirmative defense depends on Defendants' insufficiently pled fraud claim.  Because Defendants are "unable to properly allege or prove that [Drop Stop] obtained the ['291] patent through fraud on the PTO, the patent misuse claim would fail" as well.  *ESCO Corp.*, 158 F. Supp. 3d at 1069.  Indeed, "a patent owner is not deemed guilty of misuse or illegal extension of the patent right when it seeks to enforce its patent rights against infringement or contributory infringement."  *Id.* at 1068.  This affirmative defense should be stricken *with prejudice*.

Defendants' **fifth affirmative defense** of inequitable conduct should also be stricken for many of the reasons articulated above, including because it consists of conclusory allegations that fail to meet the requirements of Fed. R. Civ. P. 9(b).  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326-27 (Fed. Cir. 2009)

18

1 (inequitable conduct was insufficiently alleged as affirmative defense and

2 counterclaim); *ESCO Corp.*, 158 F. Supp. 3d at 1059-60 (same).  This standard

3 applies regardless of whether inequitable conduct is asserted as an affirmative

4 defense or counterclaim.  *Exergen Corp.*, 575 F.3d at 1326-27; *ESCO Corp.*, 158 F.

5 Supp. 3d at 1059-60.  As set forth above, Defendants fail to allege any material

6 misrepresentation made to the USPTO, any reliance by the USPTO thereon and any

7 scienter.  (Dkt. No. 60 at 14 ¶ 112-120 ¶ 132).

8      Indeed, Defendants fail to substantiate any basis for alleging inequitable

9 conduct.  For the most part, they simply allege that Drop Stop "obtained the '291

10 Patent through a serious [*sic*] of egregious and intentional misrepresentations before

11 the USPTO in its attempt to broaden the scope of the '291 Patent."  (Dkt. No. 60 at

12 13 ¶ 112).  For this proposition, Defendants' point to purported back-and-forth

13 exchanges between Drop Stop's attorneys and the USPTO during prosecution—none

14 of which demonstrate any fraudulent representations.  Further, lumping together the

15 named inventors and prosecuting attorneys, and somehow alleging they committed

16 inequitable conduct, is insufficient.  *BlackBerry Limited*, 2014 WL 1867009, at *1-

17 *4.  Even more puzzling is Defendants' allegation that Drop Stop ***disclosed***

18 additional prior art to the USPTO during amendment, rather than concealed it.  (Dkt.

19 No. 60 at 15 ¶¶ 118-19).  In short, Defendants allege that Drop Stop's "rampant and

20 intentional misrepresentations . . . constitute[] inequitable conduct."  (Dkt. No. 60 at

21 16 ¶ 121).  But they fail to articulate what these "misrepresentations" are, how they

22 are material, how the USPTO relied on them, or otherwise provide any evidence of

23 Drop Stop's purported scienter.  This defense should be stricken.

24      Defendants' ***sixth affirmative defense*** (Notice) is not a defense to any claim

25 and should be stricken.

26      Defendants' ***seventh affirmative defense*** (No Injunctive Relief) is legally and

27 factually erroneous, and it is not a cognizable affirmative defense.  *Roland Corp.*,

28 2017 WL 513924, at *2 (striking "no injunctive relief" because it is not an

19

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND STRIKE

affirmative defense); *578539 B.C., Ltd.*, 2014 WL 12572679, at \*7-\*8 (striking "lack of irreparable harm" because it is not an affirmative defense).

Defendants' ***eighth affirmative defense*** (Non-Exceptional Case) is also not cognizable as an affirmative defense.

## VI.   <u>CONCLUSION</u>

Defendants have already been given the opportunity to amend their answer, affirmative defenses and counterclaims once before.  Yet, even after amendment, their allegations and defenses are insufficiently pled, conclusory and frivolous. Allowing Defendants to amend *again* would be an exercise in futility.  Accordingly, Drop Stop respectfully requests that Defendants' insufficiently pled counterclaims be dismissed, and affirmative defenses be stricken, ***in their entirety with prejudice***.

DATED:  May 19, 2017          By:        */s/ Guy Ruttenberg*

Guy Ruttenberg
RUTTENBERG IP LAW, A
PROFESSIONAL CORPORATION
1801 Century Park East, Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
Facsimile: (310) 627-2260
guy@ruttenbergiplaw.com
*Attorney for Plaintiffs*

20

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND STRIKE

1

## CERTIFICATE OF SERVICE

2    I certify that I caused to be served counsel of record on May 19, 2017 with

3 MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF

4 PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' AMENDED

5 COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES via CM/ECF.

6    Executed on May 19, 2017 in Los Angeles, California.

7

8             By: _____
                       */s/ Guy Ruttenberg*
9                      GUY RUTTENBERG

10 K. Kevin Mun
11 kmun@meimark.com
   Lei Mei
12 mei@meimark.com
13 Mei & Mark LLP
   818 18th Street NW, Suite 410,
14 Washington, DC 20006
   Tel: 888-860-5678 x720
15

16

17

18

19

20

21

22

23

24

25

26

27

28