Guy Ruttenberg, Bar No. 207937
guy@ruttenbergiplaw.com
Bassil Madanat, Bar No. 285280
bassil@ruttenbergiplaw.com
Daniel Kadin, Bar No. 311471
daniel@ruttenbergiplaw.com
RUTTENBERG IP LAW,
A PROFESSIONAL CORPORATION
1801 Century Park East, Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
Facsimile: (310) 627-2260

*Attorneys for Plaintiff Drop Stop LLC*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DROP STOP LLC, *a California Limited Liability Company*,<br><br>    Plaintiff,<br><br>    v.<br><br>JIAN QING "JOHNNY" ZHU, *an individual*; ZAKE INTERNATIONAL INC., *an Indiana Corporation*; ZAKE USA, *an unincorporated entity*; 3BTECH, INC., *an Indiana Corporation*; SHENZHEN ZHOUWU TECHNOLOGY CO., LTD., *a Chinese Limited Company*; and TAIWU KEJI CO., LTD., *a Chinese Limited Company*.<br><br>    Defendants. | Case No. 2:16-cv-07916 AG(SSx)<br><br>**DECLARATION OF GUY RUTTENBERG IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**<br><br>Date:         January 8, 2018<br>Time:        10:00am<br>Courtroom:  10D<br><br>Judge: Hon. Andrew J. Guilford |

I, Guy Ruttenberg, declare as follows:

I am an attorney licensed to practice in the State of California and before this Court. I am a principal at the law firm of Ruttenberg IP Law, A Professional Corporation, attorneys for Drop Stop LLC ("Drop Stop" or "Plaintiff"). If called as a witness, I could and would testify competently as to the facts set forth below, as I know each to be true based upon my own personal knowledge or upon my review of the files and records maintained by Ruttenberg IP Law, A Professional Corporation, in the regular course of its representation of Drop Stop. I submit this declaration in support of Plaintiff's Motion for Attorneys' Fees.

<u>Experience and Hourly Rates of Attorneys and Staff</u>

1. I am lead counsel for this matter. My hourly billing rate was $575.00 until through June 2017, and then $595 effective July 1, 2017. The primary associate on this matter was Bassil Madanat (through February 2017) and then Daniel Kadin through today. Mr. Madanat's hourly rate was $365.00. Mr. Kadin first started working on this matter as a law clerk at an hourly rate of $225.00. He was promoted to a full associate in March 2017, when his hourly rate became $325.00. As part of our normal annual increases, Mr. Kadin's rate increased to $335.00 effective July 1, 2017.

2. With respect to my education and professional background, I received a J.D., *cum laude*, from Harvard Law School in 1999. I received a B.A., *summa cum laude*, in Political Science and History in 1996 from the University of California, Los Angeles. Since October 2012, I have been the principal of Ruttenberg IP Law, which specializes in patent and other intellectual property litigation. Before this, I was a partner (and before that, an associate) at the law firm Kirkland & Ellis from 2000 to 2012. At Kirkland & Ellis, I also practiced patent and intellectual property litigation.

3. I am a member of the Bar of the State of California. I am admitted to practice before the Ninth Circuit Court of Appeals, the Federal Circuit and the U.S.

District Courts for the Central, Northern, Southern and Eastern Districts of California.

4. Since I began my career, my work has focused on patent and other intellectual property matters, with a primary focus on patent litigation.

5. My expertise also includes handling cross-border intellectual property disputes, including China-related intellectual property litigation, as well as intellectual property disputes involving fraud or concealment. When I was an attorney with Kirkland & Ellis, I was seconded to the Japanese law firm of Nagashima Ohno & Tsunematsu in Tokyo for one year, and I was later loaned out to the Chinese law firm of Broad & Bright in Beijing for six months.

6. One of the most difficult challenges in dealing with cases like the instant one is that the infringing products often originate overseas (*e.g.*, in China) where it can be difficult to trace and locate the infringer. The products are then sold cheaply and under fictitious names through online platforms like Amazon.com. Such infringement presents special challenges because it requires counsel to locate the infringer, identify the relevant individuals and corporate entities, serve those parties and connect them with infringing online sales. Such infringement can be particularly damaging to the patentholder not only because of lost revenues but also because of price erosion, harm to market share and harm to the product's reputation.

7. My associate Bassil Madanat received his J.D. from Pepperdine School of Law in 2012. Before that, he received a B.S. in Physiology and Neuroscience from the University of California, San Diego. Mr. Madanat has focused on patent and intellectual property litigation since 2014. Mr. Madanat is also a member of the Bar of the State of California, and is admitted to practice in the U.S. District Court for the Central District of California, the Federal Circuit and is also registered to practice before the United States Patent and Trademark Office. Mr. Madanat has experience at Ruttenberg IP Law working on a number of intellectual property

matters involving cross-border infringement and fraud or concealment by the infringer.

8.  My associate Daniel Kadin received his J.D., *summa cum laude*, from Southwestern Law School in 2016.  He received a B.A., *cum laude*, in Neuroscience from the University of Southern California in 2013, and is currently pursuing a M.S. in Biotechnology through Johns Hopkins University.  Mr. Kadin was also a summer associate with Ruttenberg IP Law during the summer of 2015.  In his time with our firm, Mr. Kadin has had experience working on a number of intellectual property matters involving cross-border infringement and fraud or concealment by the infringer.  Mr. Kadin is also a member of the Bar of the State of California, and is admitted to practice in the U.S. District Court for the Central District of California.

9.  I initially assigned Mr. Madanat to this matter, but as the case progressed, I transitioned the case to Mr. Kadin in large part to maintain proportionality with the amount of damages at stake.  As the most junior attorney at the firm, Mr. Kadin has the lowest billing rate.

10.  I assigned one associate to this case at a time in order to minimize fees. Again, Mr. Madanat was first assigned to this case, but a few months later I transferred the majority of the work to Mr. Kadin (who is our attorney with the lowest billing rate) in order to further minimize fees.  As shown in the billing records, Mr. Madanat (the more senior associate) continued to follow the case and provide guidance to Mr. Kadin, but we wrote off all of Mr. Madanat's time starting around May 2017.

11.  During the summer of 2017, the litigation progressed to the point where additional staffing was required to help with summary judgment motions, discovery motions, motions to dismiss, motions relating to sanctions and other pre-trial work. To minimize expenses, Mr. Kadin was largely assisted by our summer associate/law clerk Jordan Nafekh.  Our law clerks (including Mr. Nafekh) bill out at $225 per hour.

3
DECLARATION OF GUY RUTTENBERG

12. We also received support from our paralegal staff. My senior and primary paralegal on this matter has been William Stevens. Mr. Stevens has been a paralegal for more than 16 years, with extensive experience at multinational firms including O'Melveny & Myers and Venable LLP. The hourly rate for Mr. Stevens' time is $195.

13. When Mr. Williams was on vacation and/or when additional assistance was required, we also received assistance from Ms. Jean Lee. Ms. Lee has a Bachelor's degree from the Peabody Institute of the Johns Hopkins University, and a Paralegal Certificate from California State University, Los Angeles. Ms. Lee has been with our firm for three years. The hourly rate for Ms. Lee's time was $115 per hour though June 2017, and then $125 per hour effective July 1, 2017.

14. Based upon my extensive experience handling patent litigation matters, the rates charged by Ruttenberg IP Law are well within the range of hourly rates charged by attorneys with similar levels of experience practicing in the area of patent law in California. Indeed, until 2012, I was a partner with another national law firm, where my hourly rate was far in excess of the rates that Ruttenberg IP Law charges for my time today.

15. As shown in the billing records, we also received additional assistance and help from time to time from other staff and summer associates, including Maxwell Harrington and Rachel Narowski  For the sake of being conservative, Drop Stop has not sought those fees in connection with this motion.

## Attorney Fees

16. Attached hereto as Exhibit 1 is a true and correct copy of excerpts from redacted invoices submitted to Drop Stop in connection with the above-referenced litigation from September 2016 through October 2017. The invoices have been redacted for privileged or work product information, which is unnecessary for evaluating the time spent.

17. I reviewed each of the billing invoices from Ruttenberg IP Law in connection with the above referenced case. As the accompanying invoices indicate, I wrote off time when I thought the work could have been completed more quickly or multiple people (*e.g.,* Mr. Kadin and the law clerk/summer associate) worked together on a project. These write-offs are reflected in the accompanying invoices.

18. In connection with the pending motion, I also re-reviewed each time entry. In some cases, I wrote off additional time as part of this process. In other instances, I decided that the entries are not directly related to the instant litigation and, therefore, I removed all or a portion of the time from the instant fee request. In one instance, I marked the entry with a multiple (*i.e.*, "x0.5") because the amount sought has been reduced by 50%.

19. Drop Stop does not seek recovery of fees for entries that are completely redacted (*i.e.*, blacked out) or where there is an entry indicating "Not Sought." Drop Stop does seek recovery of fees for entries that are partially redact because the redacted portions reflect work product or privileged information.

20. The fees billed to Drop Stop, after write-offs reflected above, are as follows between September 2016 and October 2017:

| **Invoice No.** | **Month** | **Amount** |
|---|---|---|
| 10292 | Sep-2016 | $8,733.50 |
| 10293 | Oct-2016 | $4,119.00 |
| 10305 | Nov-2016 | $5,302.50 |
| 10306 | Dec-2016 | $15,756.00 |
| 10327 | Jan-2017 | $11,364.50 |
| 10346 | Feb-2017 | $15,545.00 |
| 10369 | Mar-2017 | $13,233.00 |
| 10376 | Apr-2017 | $19,046.50 |
| 10405 | May-2017 | $87,789.50 |
| 10413 | Jun-2017 | $127,796.00 |
| 10422 | Jul-2017 | $95,672.00 |
| 10432 | Aug-2017 | $98,692.00 |
| 10459 | Sep-2017 | $57,365.00 |
| 10462 | Oct-2017 | $17,751.00 |
| | **Total Sought:** | **$578,165.50** |

5
DECLARATION OF GUY RUTTENBERG

21.  For each invoice, the amounts referenced above matches the amount noted "For professional services rendered," minus any additional write-offs for entries that are completely redacted, entries marked as "Not Sought," or the entry marked as "x0.5."

22.  As shown above, the total fees charged to Drop Stop by Ruttenberg IP Law in connection with the above captioned case through October 2017 and sought in connection with this motion total $578,165.50.  This amount includes work performed by myself, Mr. Kadin, Mr. Madanat, Mr. Nafekh, Mr. Williams and Ms. Lee.  It does not include work performed by other support staff, nor does it include any of the hours written off.  It also does not include additional work performed by my firm and others prior to September 2016.  The litigation was instituted in October 2016.

23.  The work performed in connection with Drop Stop's representation in the above captioned case includes, but is not limited to:

   a.  Analysis of U.S. Patent No. 8,267,291 ("the '291 Patent");
   b.  Analysis of the '291 Patent's prosecution history and file wrapper;
   c.  Investigation of the Defendants' identities and relationships, including through search engine inquiries, Secretary of State searches, PACER searches, seller information from online marketplaces (*e.g.,* Amazon);
   d.  Analysis of the Chitronic product, including infringement analysis of the Chitronic with respect to the '291 Patent;
   e.  Compilation of ASINs associated with Chitronic products sold on Amazon, and other similar infringing products;
   f.  Effectuating service on the Defendants, negotiating a possible early stipulation with the Defendants, and seeking entry of default;

g. Opposing Defendants' motion to set aside entry of default and their motion challenging service;

h. Attending and preparing for various status conferences, hearings, settlement conferences and mediations;

i. Propounding and responding to discovery; initiating several meet-and-confers regarding Defendants' deficient productions and responses; briefing and attending a hearing on Drop Stop's motion to compel (which was granted); objecting to Defendants' harassing and improper subpoenas to Drop Stop's former attorneys;

j. Preparing and opposing various motions, including but not limited to multiple motions to dismiss, summary judgment motions, discovery motions and sanctions motions;

k. Preparing *ex parte* applications to strike Defendants' improper (and already-stricken) invalidity arguments;

l. Identification of, and discussions with, Drop Stop's technical and damages expert witnesses;

m. Preparing various pretrial documents and filings; and

n. Preparation of the instant motion for attorneys' fees.

24. The invoices reflect time records that were contemporaneously maintained. They also accurately reflect the work performed by each attorney and staff member referenced therein. I require the Firm's attorneys (in their employment agreements) to maintain and enter contemporaneous time records for any and all client work. Likewise, for staff (*e.g.*, paralegals, summer associates), their employment agreements provide that "any work performed directly for clients of the Firm should be logged (with appropriate descriptions) in our time-entry system." Further, for both attorneys and staff, our employment agreements provide that "[t]ime should be entered on a daily basis, but at the very least on a weekly basis. For any

month, all time should be entered and closed in the system by the 2nd day of the following month."

25. It is my opinion that the attorneys' fees in the amount of $578,165.50 fairly reflects the fees incurred by Drop Stop, which increased substantially as a result of Defendants' dilatory and vexatious litigation tactics, which are described at length in the briefing associated with the instant motion.

26. Indeed, the amount of fees reflected above is quite modest for litigating an entire patent litigation case from start up through pretrial.

27. Some of the work referenced in these invoices was performed on a hybrid contingency arrangement. The details of this arrangement have been redacted from the bills as they are not relevant here. *See Roush v. Berosini*, 66 F. App'x 725, 726 (9th Cir. 2003); *Gotro v. R & B Realty Group*, 69 F.3d 1485, 1487–88 (9th Cir. 1995). Most of the contingency fees are characterized as deferred.

28. In connection with Drop Stop's reply brief, I expect to supplement this submission with additional invoices for November and possibly December.

## Former Counsel of Drop Stop

29. In connection with the above-caption litigation, the Defendants subpoenaed Drop Stop's former counsel for documents and a deposition.

30. Named, attached hereto as Exhibits 2, 3 and 4 are subpoenas issued by Defendants to (i) Cislo & Thomas; (ii) Sang N. Dang and (iii) Klein, O'Neill & Singh, respectively.

31. With Drop Stop's consent and at Drop Stop's cost, these former attorneys engaged Ruttenberg IP Law to represent them in responding to the subpoenas. Accordingly, we prepared objections to these subpoenas on behalf of Drop Stop, as well as separate objections on behalf of the former counsel themselves. We also expended resources meeting and conferring with the Defendants' counsel, discussing these issues before the Magistrate Judge, and otherwise contending with these discovery requests.

32. When we first received the subpoenas, we asked Defendants' counsel to withdraw the subpoenas for documents. Although we maintained our specific objections to the requests, we repeatedly offered to stipulate that the requested documents are within Drop Stop's possession, custody or control and, therefore, it was unnecessary to seek the documents from a third party.

33. Attached hereto as Exhibit 5 is a true and correct copy of a June 8, 2017 email I sent to Lei Mei, counsel of record for Defendants, where I repeated our earlier offer: "Drop Stop has offered to stipulate repeatedly that any documents in the possession, custody or control of Drop Stop's previous law firms are also in the possession, custody or control of Drop Stop. As a result, there is no reason to subpoena third parties in order to obtain documents that are available through party discovery."

34. Defendants refused to withdraw the subpoenas.

35. The invoices referenced above also include some work performed for responding to Defendants' subpoenas on behalf of Drop Stop and its former counsel.

<u>Expert Fees</u>

36. In addition, Drop Stop seeks an award of expert fees.

37. Mr. David Smith was retained as a technical expert, and he submitted various declarations and expert reports. The hourly rate for Mr. Smith and his staff ranged from $250.00 to $350.00. In total, the invoices paid by Drop Stop were $6,575.00 in connection with this litigation. Attached hereto as Exhibit 6 are redacted copies of invoices we received from Alpine Engineering & Design, Inc. for the work of expert Smith and his colleagues. For privacy reasons, we redacted addresses, phone numbers, email addresses, tax identification numbers.

38. Mr. Sidney Blum was retained as damages expert. Mr. Blum submitted a damages report and a declaration. His hourly rate is $525. In total, Mr. Blum invoiced us and was paid by Drop Stop $7,310.00 in connection with this litigation. Attached hereto as Exhibit 7 are redacted copies of invoices we received from Flare,

Inc. for the work of expert Blum. For privacy reasons, we redacted addresses, phone numbers, email addresses, tax identification numbers.

39. In total, Drop Stop seeks $13,855.00 for expert fees.

## Summary of Fees Sought

40. In total, Drop Stop seeks an award of $578,165.50 in attorneys' fees and $13,855.00 in expert fees, for a total of **$595,020.50**.

41. Drop Stop has also separately requested its costs via Form CV-59 in accordance with L.R. 54-1 (and Fed. R. Civ. P. 54(d)). (Dkt. No. 163).

42. The fees referenced above do not take into account additional significant hours written off (as discussed), as well as costs expended on Westlaw research, or negotiations with opposing counsel on these matters.

## Other Issues Addressed in Motion

43. Attached hereto as Exhibit 8 is a true and correct copy of a Daily Mail article I downloaded from the website http://www.dailymail.co.uk/news/article-3363005/It-s-like-iPhone-explosions-TV-explosions-refrigerator-explosions-Owner-largest-hoverboard-company-defends-product-keeps-bursting-flames-hides-gated-mansion.html (last visited Nov. 20, 2017).

44. I declare under penalty of perjury under the laws that the foregoing is true and correct.

Executed this day, November 20, 2017, in Los Angeles, California.

By: _____*/s/ Guy Ruttenberg*_____
GUY RUTTENBERG

**CERTIFICATE OF SERVICE**

I certify that I caused to be served counsel of record on November 20, 2017 with DECLARATION OF GUY RUTTENBERG IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES via CM/ECF.

Executed on November 20, 2017 in Los Angeles, California.

By: */s/ Guy Ruttenberg*
GUY RUTTENBERG