UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07916 AG (SSx) | Date | January 22, 2018 |
|---|---|---|---|
| Title | DROP STOP LLC v. JIAN QING ZHU ET AL. | | |

| Present: The Honorable | ANDREW J. GUILFORD | |
|---|---|---|
| Lisa Bredahl | Not Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |

**Proceedings:** **[IN CHAMBERS] ORDER RE PLAINTIFF'S MOTION FOR ATTORNEYS' FEES (DKT. 164)**

Before the Court is Plaintiff Drop Stop LLC's ("Drop Stop") Motion for Attorneys' Fees. (Dkt. 164.) Defendants Jian Qing Zhu; Zake International Inc.; Zake USA; 3BTech, Inc.; Shenzen Zhouwu Technology Co., Ltd.; and Taiwu Kiji Co., Ltd (collectively, "Defendants") have filed an Opposition (Dkt. 167; *see also* Dkt. 172 (sealed Opposition)), including Objections to Plaintiff's Billing Records (Dkt. 167-1). Plaintiff has filed a Reply (Dkt. 178) and a separate Response to Defendants' Billing Record Objections (Dkt. 177).

Plaintiff has also filed an Application to the Clerk to Tax Costs. (Dkt. 163.) Defendants have filed Objections (Dkt. 170) and Plaintiff has filed a Response to Defendants' Objections (Dkt. 176).

Plaintiff's Motion is GRANTED-IN-PART. Defendants' Objections to Plaintiff's Billing Records are DENIED to the extent stated in this Order. The Court awards Plaintiff $600,000 in attorneys' fees. Plaintiff's request for expert fees is DENIED. Defendants' Objections to Plaintiff's Application to the Clerk to Tax Costs are DENIED-IN-PART and GRANTED-IN-PART. Plaintiff is directed to file an amended application to the Clerk to tax costs consistent with this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07916 AG (SSx) | Date | January 22, 2018 |
|---|---|---|---|
| Title | DROP STOP LLC v. JIAN QING ZHU ET AL. | | |

**1. BACKGROUND**

Plaintiff is the owner of U.S. Patent No. 8,267,291 ("the '291 Patent"). The '291 Patent is directed to an apparatus that obstructs the gap between an automobile's front seats and center console, preventing personal items from becoming lodged in that gap. Plaintiff markets and sells a commercial product covered by the '291 Patent, The Drop Stop. The product and its packaging are marked with the '291 Patent.

**1.1. Pre-Litigation Conduct**

In March 2015, Plaintiff sent a cease-and-desist email to an Amazon storefront called "Also Popular." (*See* Dkt. 110-10 at DS_000403.) The email stated Also Popular was in violation of the '291 Patent and demanded Also Popular take down a listing for the ChiTronic Vehicle Brake Filler, an accused product in this case. (*Id.*) The letter further stated, "[i]f this is the last time we see this act of infringement, and you NEVER list said infringing product(s) again on Amazon or any other selling sites, we will consider this matter closed." (*Id.*) Also Popular initially complied, but four days later, re-listed the accused products and sent Plaintiff an email. (*Id.* at DS_000399-400.) The email begins: "We take copyright issues very seriously. We sent your product as well as ours to our patent attorney for a close exam. Here is what our attorney's findings." (*Id.*) The email then includes a quick non-infringement analysis for each of the independent claims of the '291 Patent, followed by the contact information for an attorney, MacMillan. (*Id.*) The email concludes by directing Plaintiff to contact MacMillan with "any further issue" and then states "[s]hall we see again in any way you or your associates leave us bad feedback, even though childish, we shall be forced to rain upon yours." (*Id.*)

Plaintiff's counsel sent a formal letter to MacMillan responding to the non-infringement positions in Also Popular's email. (Dkt. 110-13.) MacMillan forwarded the letter to Defendants' employee and asked him to call to discuss. (Dkt. 110-9 ("MacMillan Dep."), 62:11–63:17.) Defendants did not respond to MacMillan's request and ultimately did not respond to Plaintiff's letter. (*Id.* at 63:5–17; 64:22–655.)

Plaintiff subpoenaed MacMillan to appear for a deposition in this case. (*See id.*) Hours before

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07916 AG (SSx) | Date | January 22, 2018 |
|---|---|---|---|
| Title | DROP STOP LLC v. JIAN QING ZHU ET AL. | | |

the deposition, Defendants produced the original email from MacMillan to Defendants' employee that included MacMillan's non-infringement positions. (Dkt. 110-11.) At the end of the analysis, MacMillan's email states, "PLEASE NOTE - this informal opinion cannot be relied upon definitively. A formal opinion is required, and that involves extensive study and other efforts to provide a reliable outcome. Please call me to discuss." (*Id.*) This statement is notably missing from the email Also Popular sent to Plaintiff with the non-infringement positions. MacMillan testified that Defendants never sought a formal non-infringement opinion from him and that he could not stand by his informal opinion. (MacMillan Dep., 34:5-9, 35:21-36:7, 44:1-6, 45:12-21, 55:18-56:9, 56:13-23.)

Throughout 2015 and 2016, Plaintiff attempted to learn the identities of Defendants, *i.e.* the individuals or entities that managed the Also Popular storefront. (Dkt. 28-1 ("Ruttenberg Decl. I"), ¶¶ 2–4.) By August 2016, Plaintiff was able to obtain names and email addresses from Amazon for some of the Defendants. (*Id.* at ¶ 4; Dkt. 28-2.)

### 1.2 Litigation Conduct

Plaintiff initiated this lawsuit on October 24, 2016, alleging that five of the six Defendants infringed claims of the '291 Patent. (Dkt. 1 ¶¶ 76–94.) Plaintiff served these Defendants between October and November 2016. (Dkts. 14–18.) In late October, Plaintiff emailed counsel for some of the defendants, including discussing waiving service for certain other defendants and drafting a stipulation for limited damages discovery at the outset of the case. (Dkt. 28-8.) At some point, Defendants' counsel stopped responding to emails. (Ruttenberg Decl. I., ¶¶ 23–24.)

In December 2016, after all five Defendants missed the deadline to file an answer to the Complaint, Plaintiff promptly filed an application for the clerk to enter default judgment. (Dkts. 19, 20 (granting application).) Three weeks later, the five Defendants filed a motion to set aside default. (Dkt. 23.) After holding a hearing regarding the motion, the Court issued an order on January 30, 2017 stating, "[b]efore the January 23, 2017 hearing on this motion, the Court was concerned by some of Defendants' actions. After both parties made their arguments at the hearing, the Court became further convinced that Defendants may be unduly delaying litigation by keeping this case at its starting gate." (Dkt. 33 at 3.) After

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07916 AG (SSx) | Date | January 22, 2018 |
|---|---|---|---|
| Title | DROP STOP LLC v. JIAN QING ZHU ET AL. | | |

finding that service had been successfully accomplished, the Court found "some cost-shifting" appropriate and ordered Defendants to pay $5,000 to Plaintiff's counsel "for costs incurred serving Defendants and opposing this motion." (*Id.* at 3, 4.) At a hearing in March 2017, Plaintiff brought to the Court's attention that Defendants had not yet paid the $5,000 sanction, forcing the Court to set a formal deadline for payment. (Dkt. 82 (Tr., Mar. 6, 2017), 4:19–5:25.)

The five Defendants filed their first Answer in February 2017. (Dkt. 38.) As part of early settlement efforts ordered by the Court and after discussions with Defendants' counsel, Plaintiff sent a letter to Defendants in February outlining a settlement proposal. (Dkt. 158 (Tr., June 19, 2017), 13:6–9.) In April, the parties went to mediation, but were unable to reach settlement. (Dkt. 47.) The mediation report notes that one of the defendants, Shenzen, did not appear for mediation. (*Id.*) The parties dispute whether an individual with settlement power attended the mediation on behalf of Shenzen.

In a First Amended Answer and Counterclaims, filed April 28, 2017, the Defendants added a patent misuse affirmative defense based entirely on Plaintiff's statements during settlement discussions and mediation. (Dkt. 60; Dkt. 94 at 8 (Order striking patent misuse affirmative defense) *see also* Dkt. 158, 11:10–13:5.) Defendants also added an affirmative defense of inequitable conduct and an antitrust *Walker Process* counterclaim. After the mediation, the Defendants also informed Plaintiff for the first time of another entity that should have been named as a defendant in the case, Taiwu. (Dkt. 158, 15:14–16.) Plaintiff filed a First Amended Complaint adding Taiwu as a defendant. (Dkt. 63.)

Litigation continued, with the parties filing cross motions to dismiss Plaintiff's amended complaint and the five original Defendants' amended answer to the original complaint. (Dkts. 64, 67.) The five original Defendants then filed an answer to the amended complaint. (Dkt. 69.) In the meantime, Plaintiff also filed a motion for sanctions for defendant Shenzen's alleged failure to appear at the mediation. (Dkt. 73.)

On June 20, 2017, the Court struck the five defendant's answer to the amended complaint and ruled that their amended answer to the original complaint would be the operative pleading. (Dkt. 94 at 4.) The Court found the answer to the amended complaint pled new

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07916 AG (SSx) | Date | January 22, 2018 |
|---|---|---|---|
| Title | DROP STOP LLC v. JIAN QING ZHU ET AL. | | |

theories for the defense of invalidity and there was no reason why those theories weren't stated in the earlier answer. (*Id.*) The Court also struck Defendants' patent misuse and inequitable conduct affirmative defenses and Defendants' antitrust counterclaim. (*See generally*, *id.*)

On June 30, 2017, regarding Plaintiff's motion for sanctions, the Court noted that the circumstances surrounding Shenzen's alleged failure to appear at the mediation were "concerning," but it was "unclear whether this was all due to bad faith or sloppiness." (Dkt. 100 at 3.) Two days earlier, in an order granting-in-part and denying-in-part a motion to compel from Plaintiff, the Magistrate Judge noted that the delay in adding Taiwu as a defendant in the case was "attributable to the conduct of Defendants. . . . [I]t appears that other Defendants had the ability to obtain information from Taiwu yet neglected to do so until recently." (Dkt. 99 at 2.) The Magistrate Judge further noted, "Taiwu's delayed disclosure of relevant information is consistent with Defendants' overall delay of the entire action, by initially improperly objecting to service, etc., and by delaying Defendants' responses to discovery." (*Id.*) The Magistrate Judge noted that the disputes had been narrowed since Plaintiff's motion was originally filed. (*Id.* at 1.) At the hearing, Plaintiff's counsel argued that Defendants waited until after Plaintiff's motion to compel was served, as required by this District's local rules, before producing any documents in the case.

On July 10, 2017, Plaintiff filed a Motion for Summary Judgment for direct and indirect infringement, willfulness, damages, and a finding of no invalidity. (Dkt. 103.) Because of continuing disputes about whether Defendants could raise certain affirmative defenses and counterclaims, the parties agreed to enter a stipulation extending discovery so that Defendants would have time to seek a ruling on the issue from the Court. On July 31, 2017, however, Defendants filed a Motion for Summary Judgment of their own, requesting a finding of non-infringement and invalidity on the basis of indefiniteness, one of the invalidity defenses covered by the parties' stipulation. (Dkt. 123.) The next day, Plaintiff filed an ex parte application to strike portions of Defendants' motion relating to indefiniteness, a defense the Court had stricken in its June 20, 2017 Order. (Dkt. 126.) The Court granted the ex parte application on August 4, 2017. (Dkt. 129.) Four days later, on August 8, 2017, Defendants filed an ex parte application for reconsideration of the Court's order granting the ex parte application. (Dkt. 130.) This ex parte application was promptly denied. (Dkt. 132.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07916 AG (SSx) | Date | January 22, 2018 |
|---|---|---|---|
| Title | DROP STOP LLC v. JIAN QING ZHU ET AL. | | |

In the order denying , the Court noted that it was "concerned about misleading statements in Defendants' ex parte application" and stated that it would consider sanctions against Defendants at an upcoming hearing. (Dkt. 132.)

In August 2017, in its order granting-in-part and denying-in-part Plaintiff's Motion for Summary Judgment, the Court noted that Defendants' opposition raised defenses that Defendants had either waived of their own accord (*see* Dkt. 138 at 10) or that the Court had struck as untimely (*id.* at 13.) Although sanctions were denied, at the hearing on the Motion, the Court and Plaintiff discussed the applicability of *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014).

### 1.3 Settlement

In September 2017, the parties filed a joint stipulation to stay the case in light of pending settlement, which the Court granted. (Dkts. 149, 150.) On November 1, 2017, in response to an amended joint stipulation by the parties concerning the settlement, the Court entered Final Judgment. (Dkt. 155.) Based on the parties' agreed language in their Amended Joint Stipulation for the Final Judgment (*see* Dkt. 154), the Final Judgment states, "Judgment is entered in favor of Drop Stop with respect to its claims for direct and indirect infringement of claims 8, 10–14 and 16–18 (the 'Asserted Claims') of the '291 Patent." (Dkt. 155, ¶ 1.) The parties also stipulated for the Final Judgment to state, "[a]fter entry of Final Judgment, Drop Stop may file a motion for attorneys' fees and costs within the time set forth in Fed. R. Civ. P. 54(d), and the Court will retain jurisdiction to consider such motion, including to make any and all factual findings (*e.g.*, willfulness, litigation misconduct, exceptional case) related to such a finding." (*Id.* at ¶ 7.)

## 2. LEGAL STANDARDS

### 2.1 Attorney Fees

The Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. In this context, "exceptional" retains its ordinary meaning of "uncommon," "rare," or "not ordinary." *Octane Fitness*, 134 S. Ct. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07916 AG (SSx) | Date | January 22, 2018 |
|---|---|---|---|
| Title | DROP STOP LLC v. JIAN QING ZHU ET AL. | | |

1756. Accordingly, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* "Section 285 discourages certain 'exceptional' conduct by imposing the cost of bad decisions on the decision maker." *Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, 79 F. Supp. 3d 1111, 1114 (C.D. Cal. 2015); *accord Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 130 F. Supp. 3d 1331, 1334 (C.D. Cal. 2015).

District courts determine whether a case is "exceptional" on a case-by-case basis, "considering the totality of circumstances." *Octane Fitness*, 134 S. Ct. at 1756. Fees may be awarded where "a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless" exceptional. *Id.* at 1757. "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* A party must prove its entitlement to fees by a preponderance of the evidence. *Id.* at 1758.

In the companion case to *Octane Fitness*, the Supreme Court held that " all aspects of a district court's § 285 determination" are reviewed on appeal for abuse of discretion. *Highmark Inc. v. Allcare Health Mgmt. Sys.*, 134 S. Ct. 1744, 1749, 188 L. Ed. 2d 829 (2014).

### 2.2 Costs

Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs–other than attorney's fees–should be allowed to the prevailing party." A prevailing party is presumptively entitled to recover costs. *Save Our Valley v. Sound Transit*, 335 F.3d 932, 946 (9th Cir. 2003). "[A] district court need not give affirmative reasons for awarding costs; instead it need only find that the reasons for denying costs [if any are provided] are not sufficiently persuasive to overcome the presumption in favor of an award." *Id.* at 945.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07916 AG (SSx) | Date | January 22, 2018 |
|---|---|---|---|
| Title | DROP STOP LLC v. JIAN QING ZHU ET AL. | | |

### 3. ANALYSIS

#### 3.1 Exceptional Case

It's not every day that the Court provides a four-page resuscitation of the facts as it sees them. But it's true that the facts often speak for themselves. That's certainly the case here. Taken individually, the pieces of the story might not make Defendants' conduct look exceptional. The whole tale, however, leads to a different conclusion.

Some parts of the story stand out. Defendants' reliance on MacMillan's purported non-infringement opinion is particularly exceptional. Defendants are correct that there is no requirement that an infringer seek advice of counsel to avoid a willful infringement finding. 35 U.S.C. § 298 (*see* Dkt. 172 at 9.) The problem is that even in Opposition to Plaintiff's Motion for Fees, Defendants continue to use MacMillan's "informal opinion" (Dkt. 110-11) to support their conduct before litigation. (Dkt. 172 at 9–10.) MacMillan was clear: In a note specifically omitted from Defendants' email to Plaintiff, MacMillan stated, "[a] formal opinion is required, and that involves extensive study and other efforts to provide a reliable outcome. Please call me to discuss." (Dkt. 110-11.) It would be one thing if Defendants simply received the email from MacMillan and purported to rely on it as an opinion of counsel. But the fact that Defendants removed MacMillan's disclaimer and copy-pasted the rest of MacMillan's statements in an email to Plaintiff is more concerning. Even more concerning, after MacMillan and Defendants received Plaintiff's formal response to the email, Defendants did not respond.

Defendants argue, "[s]ince the total revenue and profits are so low, Defendants chose not to pay tens of thousands of dollars for a formal opinion of counsel and that action was reasonable under the circumstances." (Dkt. 172 at 10.) This argument does not address the problem that 1) Defendants held themselves out to Plaintiff as having undertaken a serious non-infringement analysis through an attorney; and 2) Defendants did not respond to Plaintiff's further letter and infringement positions. The issue is not that Defendants failed to obtain a formal opinion of counsel, it is how Defendants conducted themselves in their interactions (or lack thereof) with Plaintiff regarding their alleged non-infringement positions.  Defendants' Opposition does not address these shortcomings, and it's difficult to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07916 AG (SSx) | Date | January 22, 2018 |
|---|---|---|---|
| Title | DROP STOP LLC v. JIAN QING ZHU ET AL. | | |

imagine an explanation that would suffice. At the hearing, Defendants' counsel did not address these shortcomings, either. Instead, Defendants reiterated arguments in their Opposition that they were unsophisticated concerning U.S. patent law, took Plaintiff's cease and desist email seriously, consulted an attorney, stopped selling their products, and did not begin selling again until after they had received an answer back from the attorney. But even generally accepting this version of events, the Court's concerns about the tenor of Defendants' non-infringement email to Plaintiff and the lack of follow up after receiving a formal letter from Plaintiff remain unanswered. The story is not fully explained, and the written record of the events as they unfolded remains exceptional.

To support its bid for an exceptional case finding, Plaintiff first urges the Court to find that Defendants willfully infringed the '291 Patent. (*See generally*, Dkt. 164-1.) But there hasn't been a Court ruling or jury verdict of infringement in this case. Instead, as part of the parties' settlement, they stipulated to a Final Judgment "entered in favor of Drop Stop with respect to its claims for direct and indirect infringement of claims 8, 10–14 and 16–18 (the 'Asserted Claims') of the '291 Patent." (Dkt. 155, ¶ 1.) The Court is persuaded that Defendants' conduct before litigation is relevant and indeed factors into an exceptional case finding, which looks at the totality of the circumstances. *Octane Fitness*, 134 S. Ct. at 1756. But the Court declines to make an independent finding of willful infringement. Instead, the Court finds the combination of Defendants' actions both before and during litigation support the conclusion that this is an exceptional case.

With the MacMillan "opinion" setting the stage, Plaintiff was eventually able to learn the identities of (some of) the Defendants and file its Complaint. At the outset of litigation, the Court was "convinced that Defendants may be unduly delaying litigation by keeping this case at its starting gate" after Defendants failed to answer the Complaint and then moved to set aside default on the basis of improper service. (Dkt. 33 at 3.) Indeed, the Court sanctioned Defendants $5,000 for their conduct (*id.*), a sanction Defendants failed to pay until the Court set a further deadline at a hearing more than a month later. (Dkt. 82, 4:19–5:25.) Defendants' argument that it should not be "penalized again" for this conduct misses the point. (Dkt. 172 at 14.) In the scheme of things, this is simply is another factor to show the unreasonable manner in which Defendants conducted themselves. *Octane Fitness*, 134 S. Ct. at 1756.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07916 AG (SSx) | Date | January 22, 2018 |
|---|---|---|---|
| Title | DROP STOP LLC v. JIAN QING ZHU ET AL. | | |

During the course of litigation, the Court also found Defendants had added a patent misuse defense to an amended answer and counterclaims based "entirely on information that Defendants received during the parties' confidential settlement negotiations." (Dkt. 94 at 8.) As the Court noted, "Rule 408 reflects appropriate concerns about how evidence of settlement demands may be used in litigation." (*Id.*) Notably, in a portion of their Opposition to Plaintiff's Motion for Fees, Defendants blame Plaintiff for "unreasonably refus[ing] to engage in any further settlement discussions" later in the case. (Dkt. 172 at 15.) But Defendants fail to acknowledge the chilling effect of adding an affirmative defense based entirely on information collected in settlement discussions. Defendants argue the patent misuse defense wasn't frivolous. (*Id.*) Frivolous or not, Defendants' failure to at least recognize the oppressive and chilling nature of such an allegation is concerning.

In denying a motion for sanctions regarding Shenzen's alleged failure to attend an April mediation, the Court noted the issue was "concerning," even though it was "unclear whether this was all due to bad faith or sloppiness." (Dkt. 100 at 3.) Defendants argue that the fact that the Court denied this motion for sanctions is "notable." (Dkt. 172 at 14.) In other words, where the Court issued sanctions during litigation, Defendants argue they should not be "penalized again," but where the Court did not issue sanctions during litigation, Defendants rely on that fact as evidence that they did not act unreasonably. Again, Defendants miss the point. Fees may be awarded where "a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless" exceptional. *Octane Fitness*, 134 S. Ct. at 1757.

Defendants' other problematic conduct has already been described at length, including Defendants' re-raising of affirmatively waived arguments and defenses previously struck by Court Order. The Court also factors that conduct into its determination of an exceptional case finding.

Defendants argue that they were "cooperative and took efforts to reduce fees and costs" over the course of litigation. (Dkt. 172 at 17–18.) At the hearing, Defendants' counsel reiterated arguments from their brief that mitigating factors warrant against an exceptional case finding. Defendants note that they hired new counsel after the April mediation, participated in an informal discovery process, stipulated to extensions of discovery, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07916 AG (SSx) | Date | January 22, 2018 |
|---|---|---|---|
| Title | DROP STOP LLC v. JIAN QING ZHU ET AL. | | |

attempted to mitigate the chilling effect of their affirmative defenses by proposing an NDA. These arguments ignore Defendants' rocky start to litigation and failure to produce any discovery at all until after Plaintiff served them with a motion to compel. In many ways, the damage had been done by Defendants' previous behavior and these efforts were too little, too late. They also don't excuse the fact that Defendants continued to conduct themselves unreasonably through the late timing of their discovery and by continuing to raise stricken or waived arguments, including through frivolous ex parte practice. Defendants also blame Plaintiff for its own allegedly "vexatious litigation tactics." (*Id.* at 22–25.) Defendants 1) question Plaintiff's motive in filing suit, 2) accuse Plaintiff of misrepresenting the value of its damages to avoid the Court's Standing Local Rules, 3) accuse Plaintiff of abusing the discovery process, and 4) argue that Plaintiff's "own unreasonable tactics," including sending two attorneys to appear at hearings, mediation, and settlement conferences, unnecessarily raised fees and costs. (*Id.*) After considering each of Defendants' arguments, the Court finds them to be without merit. These arguments are not credibly substantiated. For instance, Defendants argue that Plaintiff filed this suit on a shaky claim of infringement, even though Defendants have stipulated to infringement at this point. As another example, this Court's Patent Local Rules note that the Court will consider a request to opt out if the case involves less than $2 million. At no point do Defendants allege that Plaintiff was seeking over $2 million in damages. Plaintiff's alleged abuses of the discovery process and delay tactics are also unpersuasive. Moreover, none of these arguments explain or excuse Defendants' behavior either before or following the filing of this lawsuit.

Fees are awarded "not as a penalty for failure to win a patent infringement suit, but as appropriate only in extraordinary circumstances." *Octane Fitness*, 134 S. Ct. at 1753 (internal quotation omitted). The test under *Octane Fitness* is determined by considering the totality of the circumstances. *Id.* at 1756. Further, the Supreme Court recognized "the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6 (internal quotation omitted). Defendants argue that the Supreme Court's decision in *Octane* was motivated by concerns about the proliferation of non-practicing entities ("NPEs"). Defendants argue that while it may be appropriate to require a Plaintiff NPE to pay the full cost of a litigation in exceptional circumstances, to require a defendant–the party sued–to pay litigation expenses in full would be inappropriate. To support this argument, Defendants emphasize this Court's decision in *Universal Electronics., Inc. v. Universal Remote Control, Inc.*, No.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07916 AG (SSx) | Date | January 22, 2018 |
|---|---|---|---|
| Title | DROP STOP LLC v. JIAN QING ZHU ET AL. | | |

SA CV 12-00329 AG (JPRx), 2015 WL 12733442, at *8 (C.D. Cal. Mar. 10, 2015). In *Universal Electronics*, the Court leveled fees against the losing party only as to one of the asserted patents and a specific motion for reconsideration for another asserted patent. *Id.* Defendants suggest that fees should be apportioned here as well, although they do not explain how fees could be apportioned in this case (besides implying that they should only be responsible for fees related to a single ex parte application).

While it might be correct that the current focus on "loser pays" has the wind of NPEs in its sails, knock-offs have lurked in the surrounding waters even longer. It goes without saying the factual circumstances surrounding every case are different. *Universal Electronics* did not present the same products or pre-litigation conduct at issue here. Nor does the Court delve into the substantive strength of the parties' litigation positions, which were key considerations in *Universal Electronics. See id.* at *4. With Defendants' pre-litigation conduct and their conduct during litigation, particularly at the outset of litigation, there is strong reason to believe that this case could have been resolved amicably and early if not for Defendants' actions. Instead, this case was dragged through summary judgment motions before the parties could resolve their dispute. Under the circumstances, it would be inappropriate to apportion fees issue-by-issue as Defendants suggest. Considering the totality of the circumstances, the Court finds the considerations described in *Octane* are met here. Defendants conducted themselves in an unreasonable manner, and Plaintiff is entitled to recovery its attorneys' fees under § 285.

### 3.2 Expert Fees

Plaintiff also requests expert fees under the Court's inherent authority to impose sanctions. (*See* Dkt. 175 ("Ruttenberg Supp. Decl."), ¶¶ 10–11.) "Use of this inherent authority is reserved for cases where the district court makes a finding of fraud or bad faith whereby the very temple of justice has been defiled." *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921 (Fed. Cir. 2012) (quoting *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378 (Fed.Cir.1994) (internal quotations omitted).) Although Plaintiff has proven by a preponderance of the evidence that Defendant's conduct was exceptional, Plaintiff has not shown that this higher standard has been met. The Court declines to award Plaintiff its expert fees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07916 AG (SSx) | Date | January 22, 2018 |
|---|---|---|---|
| Title | DROP STOP LLC v. JIAN QING ZHU ET AL. | | |

**3.3 Calculating Attorneys' Fees**

Some have become concerned about wasted effort focused on the recovery of fees under Section 285. The calculation of actual fees awarded are a significant part of the time and energy dedicated to Section 285 motions. This Court has found "[t]here is a growing trend that District Court judges should award fees based on an overall global understanding and review of a case, rather than on a tedious review of voluminous time entries and hourly rates." *Universal Elecs.*, 130 F. Supp. 3d at 1335. Following the current practice in the profession, this Court uses an aggregate, global methodology to evaluate the proper amount of fees. *See generally*, *id.*

Plaintiff has presented evidence of its litigation expenses during the course of litigation. Specifically, Plaintiff requests a total award of $606,912 for attorneys' fees, including fees associated with filing this Motion. (Dkt. 165 ("Ruttenberg Decl."); Ruttenberg Supp. Decl., ¶¶ 10–11.) Plaintiff has provided adequate supporting documents detailing the basis for its requested fee award. The Court, after reviewing those documents, finds that $600,000 in fees is the proper amount. This case has been pending for over a year, since October 2016. For a patent infringement action approaching pretrial, this amount of fees is lower than one might expect. Plaintiff's supporting documents show that Plaintiff's counsel reasonably reviewed his requested fees and doesn't seek fees for some significant hours spent on the case, including fees for fully redacted entries or time where he "thought the work could have been completed more quickly or multiple people . . . worked together on a project." (*Compare* Ruttenberg Decl., ¶¶ 17–20 *with* Dkt.165-1 (Ruttenberg IP Law's Invoices).) As outlined in the other sections of this Order, the parties engaged in significant motion practice, attended numerous hearings, and undertook full fact and expert discovery before settling the case. These fees are warranted both to deter Defendants from engaging in a similar pattern of pre-litigation conduct, and because these fees were incurred largely due to Defendants' actions-- including delay tactics, chilling defenses, and re-raised arguments–taken during the course of litigation.

Defendants have filed Objections to Plaintiff's billing records. (*See* Dkt. 167-1.) Defendants emphasize Plaintiff's statement that "[s]ome of the work referenced in these invoices was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07916 AG (SSx) | Date | January 22, 2018 |
|---|---|---|---|
| Title | DROP STOP LLC v. JIAN QING ZHU ET AL. | | |

performed on a hybrid contingency arrangement." (Ruttenberg Decl., ¶ 25.) Defendants argue that Plaintiff must show that its requested fees "were the actual fees agreed and paid by Plaintiff." (*See, e.g.*, Dkt. 167-1, ¶ 3.) Defendants cite solely to *Octane* regarding this issue (*id.* at n.1), but *Octane* does not address the question of the amount of fees and how those are impacted by an attorney's billing arrangements. *See Octane*, 134 S. Ct. at 1756. Defendants do not otherwise address Plaintiff's cited caselaw. Defendants also argue that Plaintiff's counsel's billing rates from $325 to $595 were unreasonably high given the damages at stake. (*Id.* at ¶ 2.) Defendants, however, do not address the fact that information about damages at stake was unavailable to Plaintiff when it hired its counsel at the outset of litigation. Defendants' objections on these grounds are unpersuasive.

Regarding the time entries themselves, Defendants argue that all of the partially redacted time entries should be excluded from Plaintiff's fee request. (*See, e.g.*, *id.* at ¶ 4.) This argument is unpersuasive. *Maloney v. T3Media, Inc.*, No. CV 14-05048-AB (VBKx), 2015 U.S. Dist. LEXIS 86183, at *22-*23 (C.D. Cal. May 27, 2015) ("the Court finds the[] minimal redactions reasonable to protect the attorney-client privilege while still affording the Court sufficient detail to determine the reasonableness of the hours requested.") Defendants argue that any costs incurred serving Defendants and opposing Defendants' motion to set aside default should be offset by the $5,000 Defendants were previously ordered to pay Plaintiff. (*Id.* at ¶¶ 6–9.) This objection is also unpersuasive, as the $5,000 the Court previously ordered Defendants to pay to Plaintiff was a sanction, not simply a fee offset. Defendants also object on block billing grounds. But courts "may include amounts 'block-billed' without a reduction because counsel is not required to record in great detail how each minute of his time was expended." *Universal Elecs.*, 130 F. Supp. 3d at 1340 (internal quotations omitted).

Defendants further include some specific objections for 1) Plaintiff's time spent taking non-appearances for depositions of L. Lim and R. Johnson; 2) time spent on Plaintiff's summary judgment motion; and 3) instances where two attorneys attended mediation, hearings, or conference calls. Each of these objections relates back to arguments Defendants make in their Opposition about "Plaintiff's unreasonable tactics" in litigation. (*See* Dkt. 167 at 24–25.) The argument that two attorneys should not be allowed to attend mediation, hearings, or conference calls is particularly unpersuasive. Plaintiff explains, "Drop Stop's counsel assigned a junior associate (Mr. Kadin) to handle the day-to-day work in order to save costs. (Dkt. 165

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07916 AG (SSx) | Date | January 22, 2018 |
|---|---|---|---|
| Title | DROP STOP LLC v. JIAN QING ZHU ET AL. | | |

¶¶ 8–10). Mr. Kadin is too junior to appear at the hearings alone, but his attendance ultimately reduced fees by enabling him to do most of the work outside the court." (Dkt. 178 at 25.) Although the Court encourages junior attorneys to appear and speak at hearings, it will not penalize Plaintiff here. Defendants' arguments relating to the timing of Plaintiff's summary judgment are also unavailing. Defendants assert Plaintiff improperly filed the motion three weeks before the rebuttal expert report deadline and "prematurely argued validity based on obviousness and indefiniteness, even though this Court had not yet ruled on the propriety of Defendants' invalidity arguments." (Dkt. 167 at 24.) This argument is perplexing because a review of the docket shows that the Court had ruled on the propriety of Defendants' defenses just three weeks earlier. (Dkt. 94 (Order issued June 20, 2017).) Moreover, it was *Defendants* who maintained their stricken defenses in an expert report served nine days after the Court's Order. Plaintiff explains these facts in its summary judgment motion. (Dkt. 103-1 at 19 (noting that Defendants served a 113-page expert report on June 29, 2017 where all but two pages addressed invalidity defenses omitted from the operative answer).) Defendants haven't disputed the arguments about the content of their June 29 expert report.

There is a bit more credibility to Defendants' arguments concerning Plaintiff's fees and costs related to taking non-appearances for the depositions of L. Lim and R. Johnson. For both individuals, Defendants notified Plaintiff that they would not be appearing at the noticed depositions. (Dkt. 167-7.) Defendants explained that R. Johnson was no longer an employee and suggested Plaintiff contact him directly. While Plaintiff disputes whether or not R. Johnson is still an employee, Plaintiff does not state that it tried to directly subpoena him as Defendants suggested. As to R. Lim, Defendants also notified Plaintiff that she was unavailable on the noticed deposition date. Notably, R. Lim is counsel for some of the Defendants. Plaintiff's arguments that it had to proceed with appearing for deposition and taking notices of non-appearances for these witnesses are unpersuasive. The Court has excluded the fees and costs associated with these depositions from its calculations.

### 3.3 Costs

Plaintiff has properly filed an Application for the Clerk to Tax Costs. (Dkt. 163.) Defendants have filed Objections on two grounds: 1) Defendants argue they already paid service of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-07916 AG (SSx) | Date | January 22, 2018 |
|---|---|---|---|
| Title | DROP STOP LLC v. JIAN QING ZHU ET AL. | | |

process fees as part of their previous $5,000 payment to Plaintiff and 2) Defendants argue that under the local rules, reporter's transcripts are not taxable costs except under particular circumstances not present here. (Dkt. 170.) Defendants' first objection is DENIED for reasons already stated. Namely, the Court's Order that Defendants pay $5,000 was a sanction, not just a fee offset. Plaintiff does not respond to Defendants' second objection. The Court agrees with Defendants that Plaintiff's requested $494.40 is not recoverable by Plaintiff as a taxable cost in these circumstances and GRANTS this objection. Plaintiff's application for costs also includes $1,175.00 for depositions. (*See* Dkt. 163.) Plaintiff must revise this amount to omit costs relating to taking notices of non-appearance for R. Lim and R. Johnson.

## 4. DISPOSITION

Plaintiff's Motion is GRANTED-IN-PART. Defendants' Objections to Plaintiff's Billing Records are DENIED to the extent stated in this Order. The Court awards Plaintiff $600,000 in attorneys' fees. Plaintiff's request for expert fees is DENIED. Defendants' Objections to Plaintiff's Application to the Clerk to Tax Costs are DENIED-IN-PART and GRANTED-IN-PART. Plaintiff is directed to file an amended application to the Clerk to tax costs consistent with this Order.

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |